2008 UT 40

**David R. HARTWIG, Plaintiff and Appellant,**

v.

**Cynthia JOHNSEN, Defendant and Appellee.**

**No. 20070576.**

Supreme Court of Utah.

July 8, 2008.

David R. Hartwig, Salt Lake City, for plaintiff.

Richard C. Dibblee, Salt Lake City, for defendant.

WILKINS, Justice:

¶ 1 We are called upon in this case to decide the narrow question of whether the trial court applied the correct legal standard when it concluded that withdrawal of counsel was not justified because the attorney-client relationship was not "irretrievably broken." We conclude that the trial court applied the wrong legal standard. We therefore reverse and remand.

## BACKGROUND

¶ 2 In 2001, Cynthia Johnsen hired attorney David Hartwig to represent her in a personal injury claim stemming from a car accident. In conjunction with the representation, Johnsen signed a Contingent Fee Retainer Agreement (the "Agreement"). Among other things, the Agreement provided that in the event Johnsen's actions caused Hartwig to withdraw from representation prior to the completion of the case, Johnsen was obligated to pay attorney fees—based upon an hourly rate—for all the time Hartwig had expended prior to the withdrawal.

¶ 3 Some time after signing the Agreement, Johnsen and Hartwig began having difficulty with their attorney-client relationship. As a result, Johnsen threatened to file a professional misconduct claim against Hartwig with the Utah State Bar. In May 2004, and in direct response to her threat, Hartwig sent correspondence to Johnsen indicating his withdrawal from her case, effectively terminating their attorney-client relationship.

¶ 4 Following his withdrawal as counsel, Hartwig sued Johnsen for $10,392.36 plus interest [1] for work he had performed prior to

---

1. In his original complaint, Hartwig claimed Johnsen owed him $10,392.36 plus interest. At the trial, however, Hartwig testified that Johnsen owed him a slightly different amount, i.e., $10,307.17, plus $5749.63 in interest and $197.17 and $182.00 in costs and fees. Hartwig also testified that Johnsen had a credit of

the alleged breach of the Agreement. More specifically, relying on paragraphs 23 and 25 of the Agreement, Hartwig claimed that Johnsen's threat to file a claim with the Utah State Bar constituted an "action" that justified his withdrawal as counsel and entitled him to attorney fees for work performed.

¶ 5 After a two-day bench trial, the trial court concluded that Hartwig had failed to prove by a preponderance of the evidence that the attorney-client relationship had been irretrievably broken. Therefore, the trial court concluded that Hartwig was not justified in withdrawing from the case and had no right to recover his fees. Hartwig now appeals that decision.

## STANDARD OF REVIEW

[1, 2] ¶ 6 Whether attorney fees are recoverable is a question of law "which we review for correctness." *Jensen v. Sawyers*, 2005 UT 81, ¶ 127, 130 P.3d 325. The determination of whether an attorney has good cause to withdraw as counsel, however, is extremely fact-intensive. Accordingly, "[f]actual findings ... are upheld 'unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses.'" *Zions First Nat'l Bank, N.A. v. Nat'l Am. Title Ins. Co.*, 749 P.2d 651, 653 (Utah 1988) (quoting Utah R. Civ. P. 52(a)).

## ANALYSIS

■ ¶ 7 Hartwig contends that an attorney may recover fees he has already earned if the attorney withdraws from a case for "good cause." Moreover, Hartwig argues that the trial court in this case erroneously applied the higher standard of "irretrievably broken" to determine whether his withdrawal

was justified. Johnsen, on the other hand, concedes that "good cause" is the appropriate standard but argues that the trial court actually applied that standard, even though it used the term "irretrievably broken." Johnsen also contends that any error in using the "irretrievably broken" terminology was invited by Hartwig because he used that language repeatedly in his closing arguments to the trial court.[2] Finally, Johnsen claims that if we conclude that the trial court applied the incorrect legal standard, we should nonetheless affirm on alternative grounds.[3] Because we conclude that the trial court applied the wrong legal standard and that conclusion is dispositive, analysis of Johnsen's alternative grounds is premature.

■ ¶ 8 We have long held that "[w]hile a party may discharge his [or her] attorney with or without cause, [an] attorney should not withdraw from a case except for good cause." *Midvale Motors, Inc. v. Saunders*, 21 Utah 2d 181, 442 P.2d 938, 940 (1968). Accordingly, the legal standard applicable to determining whether an attorney's withdrawal is justified is whether the attorney had good cause. Whether good cause exists is a fact-intensive inquiry based on the reasons for withdrawal and the actions of the parties prior to withdrawal. If, based on the parties' actions, the withdrawal is for good cause, the attorney may seek his fees earned up until the time of the voluntary withdrawal. *See W. Wagner & G. Wagner Co. v. Block*, 107 Ohio App.3d 603, 669 N.E.2d 272, 276 (1995) (stating that an attorney could not recover fees for the time expended on a case "unless the withdrawal was for just cause"); *cf. Midvale Motors*, 442 P.2d at 940 ("[U]nless an attorney has just grounds to withdraw, he waives his retaining lien by thus terminating

---

$221.55. Therefore, the trial court will need to determine the correct amounts owed.

2. Indeed, Hartwig made several references to a "breakdown" of the attorney-client relationship during his closing argument. For example, Hartwig stated that when Johnsen threatened to file a complaint with the Utah State Bar, "that is really the decay of the relationship," which "show[s] a huge *breakdown* in trust and communications" as well as a *"breakdown"* in confidence." (Emphases added.) Additionally, Hartwig stated that "the relationship has degenerated

to a great extent, even perhaps, *irreparable,"* and that there had been a *"breakdown"* of the attorney-client relationship." (Emphases added.)

3. Johnsen raises a host of alternative grounds for affirmance. Specifically, Johnsen argues that (1) Hartwig's withdrawal was not justified because the Agreement was ambiguous and vague, (2) no "good cause" existed to justify Hartwig's withdrawal, and (3) Hartwig failed to provide sufficient evidence of damages to establish his claim for attorney fees and reasonable costs.

his services."). In order to do this, however, the attorney must have proof of the work done and demonstrate that the work was of value to or benefitted the client.

¶ 9 In this case, the trial court erroneously applied a higher legal standard, requiring that the relationship between Hartwig and Johnsen be "irretrievably broken" in order for Hartwig's withdrawal to be justified. Indeed, the trial court formally concluded that "[Hartwig] was entitled to withdraw from the case prior to completion, and to recover at his hourly rate for all time expended up to the time of withdrawal, *only if the attorney-client relationship between the parties had irretrievably broken down* as a result of [Johnsen's] actions."[4] (Emphasis added.) This is not the correct legal standard.

## CONCLUSION

¶ 10 The correct legal standard for determining whether withdrawal of counsel is justified is whether the attorney had good cause to withdraw, and the trial court in this case erroneously applied a higher legal standard. Accordingly, we reverse and remand so that the trial court may review the case based on the evidence already presented as reflected in the record and apply the correct legal standard. No further evidentiary hearing is necessary.

¶ 11 Reversed.

¶ 12 Chief Justice DURHAM, Associate Chief Justice DURRANT, Justice PARRISH, and Justice NEHRING concur in Justice WILKINS' opinion.

---

4. The trial court acknowledged that "good cause" was the correct legal standard for determining whether it was appropriate for Hartwig to have withdrawn as counsel. For example, during Hartwig's direct examination of Johnsen, the trial court asked "isn't the gravamen of the claim here that ... there had been a breakdown of communications ... justifying, the *good cause*" for withdrawal? (Emphasis added.) Additionally, the trial court acknowledged that "the standard in terms of withdrawing appears to be that there's *good cause* to withdraw." (Emphasis added.) Hartwig also notified the trial court that "good cause" was the correct standard when he argued, "This is the general rule. Basically, good cause. What is good cause? Circumstances such as client's claim is fraudulent." Although the trial court clearly understood the correct legal standard, it used different language, i.e., "irretrievably broken," in its findings of fact and conclusions of law.