**2017 UT App 175**

## THE UTAH COURT OF APPEALS

LAVON G. COX,
Petitioner,

*v.*

LABOR COMMISSION, ST. GEORGE TRUSS CO.,
AND WORKERS COMPENSATION FUND,
Respondents.

Amended Opinion[1]
No. 20150788-CA
Filed September 14, 2017

Original Proceeding in this Court

Virginius Dabney and Stony V. Olsen, Attorneys
for Petitioner

Floyd W. Holm, Attorney for Respondents St.
George Truss Co. and Workers Compensation Fund

JUDGE JILL M. POHLMAN authored this Amended Opinion, in
which JUDGES GREGORY K. ORME and KATE A. TOOMEY
concurred.[2]

---

1. This Amended Opinion replaces the Opinion in Case No. 20150788-CA issued on July 20, 2017. After our original opinion issued, Petitioner Lavon G. Cox filed a petition for rehearing, and we called for a response. We grant the petition in one limited respect, namely to define the term "baseline" as used in paragraph 20, but otherwise deny the petition.

2. Judge J. Frederic Voros Jr. was a member of the panel that initially decided this case, and he authored the original opinion. He did not have the opportunity to vote on this Amended Opinion prior to his retirement. Judge Gregory K. Orme joined the panel following the retirement of Judge Voros and upon receipt of the response to the petition for rehearing.

POHLMAN, Judge:

¶1    Petitioner Lavon G. Cox seeks judicial review of the denial of his workers' compensation claim. We conclude that the Labor Commission did not apply the correct medical causation standard. We therefore set aside the Commission's order and direct it to reconsider Cox's claim under the correct legal standard.

BACKGROUND

¶2    In 2013 Cox worked as a maintenance mechanic for Respondent St. George Truss Company. On May 7, 2013, while removing an 80-pound brake drum from a semi truck, Cox "felt a burning, popping sensation" in his back. He "dropped the drum and sunk to his knees for a couple minutes." He "tried walking it off" and went to the shop to take four 200mg tablets of ibuprofen. He asked a coworker for help with the brake drum and completed his shift doing "light maintenance" work.

¶3    The next day Cox "felt another burning, popping sensation" in his back while removing another brake drum. He again walked around, went to the shop, and took ibuprofen. He struggled to complete his work because his back hurt, with his pain at 4 on a scale of 1 to 10. He again completed his shift doing lighter work. Cox worked the remaining two days of the work week with "quite a bit of pain," rested in bed over the weekend, and worked the following week.

¶4    On May 17, 2013, Cox first reported his pain to WorkMed, an occupational health services clinic, after he fell to the ground at work while picking up a hose. Four days later Cox again reported to WorkMed when he blacked out while bending down to tie his shoe. The WorkMed doctor diagnosed Cox with a lumbar spine strain, prescribed pain medications, and referred him to physical therapy. The doctor gave Cox a light-duty work

release with the following restrictions: "No bending or twisting, [n]o lifting/working above shoulder level, [and] [n]o lifting more than 15 pounds." Cox's modified duty entailed operating a forklift, which includes manually adjusting 60-to-70-pound forks and sitting on a solid-axle forklift seat with no suspension. Cox worked ten-hour days with his pain reaching 8 on a scale of 1 to 10.

¶5　After several follow-up visits throughout May and June, the WorkMed doctor referred Cox to a physiatrist. In early July the physiatrist ordered further work restrictions, limiting Cox to four hours of work per day. Cox began working half-days with pain varying from 4 to 8 on a scale of 1 to 10. During this time, Cox "started losing bowel and bladder control . . . almost every day . . . for a while." He also started blacking out and getting lightheaded.

¶6　During a two-week period beginning in late July, Cox went to the emergency room three times because he was concerned about his back. After his first visit, his physiatrist directed him to get an MRI. The MRI revealed "severe spinal canal and neural foraminal narrowing" as well as disc bulging on four lumbar levels. He went to the emergency room again the following week because he experienced lower-back pain at home after bending over.

¶7　The following month Cox fell while getting out of his truck at work. At the time he fell, his back pain level was 8 on a scale of 1 to 10. Cox drove himself to the emergency room, where a second MRI was taken. The MRI revealed "severe spinal canal stenosis," and the doctor recommended that Cox obtain a neurosurgical consultation. The surgeon admitted Cox to the hospital that same day and scheduled lower back surgery for three days later. After surgery Cox spent three days in the hospital and a week in a rehabilitation facility. He wore a back brace for 8 to 10 weeks, continued treatment with the surgeon, and participated in physical therapy thereafter. Cox has not

worked since his fall, and he testified that he continued to have back pain varying from 4 to 8 on a scale of 1 to 10.

¶8 Cox experienced two prior incidents involving his back. In 1977 he injured his back in a car accident. He spent about five days in traction before returning to work with no pain. In 2009 he injured his back and ankle in an accident involving an all-terrain vehicle. The ankle injury required surgery. Cox's treating doctor made notes listing chronic lower back pain as a symptom in at least two subsequent visits. After the ankle surgery, Cox's back pain appeared to have mostly resolved.

¶9 Cox filed a claim with the Workers Compensation Fund. WCF denied the claim, citing the following reasons: (1) Pre-existing condition: "severe degenerative disc disease and severe stenosis," and (2) Other: "no acute findings to suggest surgery was for this claim." Cox requested a hearing before the Commission to challenge the denial of his claim. In the meantime the WCF medical examiner issued a report concluding that "[t]he claimant's industrial accident of 5/7/13 . . . [was] not the cause, aggravator or contributor to the claimant's underlying and pre-existing low back condition." But Cox's surgeon and his physician's assistant both asserted a causal relationship between the industrial accident and Cox's back problems. And Cox's surgeon later opined that "[w]hile the role that these preexisting conditions played in [Cox's] symptoms after his injury is debatable, the fact is [his] symptoms worsened after his injury to the point that he required further treatment and surgery." He further opined that "[w]ithout a worsening of symptoms, he may not have required surgery at this time despite the preexisting degenerative changes."

¶10 An Administrative Law Judge held an evidentiary hearing in May 2014. Because the medical opinion of Cox's surgeon conflicted with that of the WCF medical examiner on the medical cause of Cox's condition, the ALJ ordered a medical panel evaluation. A panel of two doctors concluded that "the

injury of May 2013 did not cause Mr. Cox's substantial lumbar spinal problems," because "[s]pinal stenosis . . . takes years to develop." The ALJ issued findings and an order denying benefits and concluding that "[t]he mechanism of injury including the two identified accidents and [Cox's] overall work exertions in his job would not cause the extensive damage seen at multiple levels." The ALJ thus agreed with the medical panel and the WCF medical examiner that Cox's problems "found during his August 2013 emergency room visit and the need for surgery and his condition post-surgery were caused by chronic and long standing degenerative disc disease."

¶11     Cox petitioned for review by the Commission. In August 2015, it affirmed the ALJ's decision denying Cox's claim for benefits. The Commission agreed that "the medical evidence shows that the relatively minor low-back strain from the work accidents is not the medical cause of any disability or [Cox's] need for surgery." Cox now petitions for judicial review.

## ISSUE AND STANDARD OF REVIEW

¶12     Cox contends that the Commission did not apply the correct legal standard for medical causation where, as here, an injury aggravates a pre-existing condition. "[W]hether the Commission has applied the correct legal standard in reaching its medical causation finding is a legal question, which we review for correctness." *Hutchings v. Labor Comm'n*, 2016 UT App 160, ¶ 24, 378 P.3d 1273.

## ANALYSIS

¶13     Cox contends that the Commission applied the incorrect legal standard for medical causation by "refusing to follow appellate court decisions holding that aggravation of a preexisting condition is sufficient to establish medical causation in an industrial case."

¶14    The Workers' Compensation Act requires the employer to cover the medical expenses of an employee "who is injured . . . by accident arising out of and in the course of the employee's employment." Utah Code Ann. § 34A-2-401 (LexisNexis 2015). The phrase "'arising out of or in the course of employment' requires that there be a causal connection between the injury and the employment." *Allen v. Indus. Comm'n*, 729 P.2d 15, 18 (Utah 1986). The claimant bears the burden of proving causation by a preponderance of the evidence. *See Virgin v. Board of Review of Indus. Comm'n*, 803 P.2d 1284, 1288 (Utah Ct. App. 1990). To prove causation, the claimant must show that the industrial accident was both the legal cause and the medical cause of the injury. *See Allen*, 729 P.2d at 25.

¶15    Simply put, the "medical cause" test requires a showing that the injury was work-related. *See id.* at 27 ("The purpose of the medical cause test is to ensure that there is a medically demonstrable causal link between the work-related exertions and the unexpected injuries that resulted from those strains."). Thus, the "key question in determining causation" is whether the employee's on-the-job exertion "in fact contributed to the injury." *Id.* at 24.

¶16    Cox argues that "medical causation" presents a "low bar" comparable to "but-for cause." (Internal quotation marks omitted.) Cox summarizes the essential inquiry for medical causation as follows: "In short, was the industrial accident 'a' cause, even a minor one?" According to Cox, the medical causation standard requires the Commission to determine whether "the three industrial accidents and the two months of light duty work on the fork lift—'cumulative trauma'[3]—have

---

3. Cox repeatedly asserts that he "suffered [a] 'cumulative trauma' over the three months preceding his spinal surgery," rather than a single industrial accident on May 7, 2013. Cox objected to the medical panel report on the ground that it was

(continued…)

any connection, even a de minimis one, to [Cox's] subsequent medical care and surgery[.]"

¶17 WCF agrees that a showing that Cox's work-related activity "medically caused *some* injury to Cox" would satisfy the medical causation standard, but argues that the medical cause inquiry begins, rather than ends, with that determination. WCF maintains that the medical causation standard requires in addition "a showing of *permanent* aggravation of a preexisting condition" and that a showing of "an exacerbation of a preexisting condition that is only *temporary* and has already reached baseline" is insufficient. (Emphasis added.)

¶18 We agree with Cox's contention that proving that the industrial accident is *a* cause—as opposed to *the* cause—of the condition requiring treatment satisfies the medical causation standard. Thus, the "aggravation or lighting up of a pre-existing disease by an industrial accident is compensable," *Allen*, 729 P.2d at 25 (citation and internal quotation marks omitted), so long as the employee's condition is "not solely the result of a pre-existing condition," *see Hutchings v. Labor Comm'n*, 2016 UT App 160, ¶ 18, 378 P.3d 1273 (quoting *Virgin v. Board of Review of Indus. Comm'n*, 803 P.2d 1284, 1288 (Utah Ct. App. 1990)). In

_____

(…continued)

based on "insufficient Interim Findings [of Fact]" that failed to consider his "cumulative trauma." The ALJ rejected this argument because, although the ALJ primarily focused on the May 7, 2013 industrial accident in its Interim Findings, "the [ALJ] and the medical panel were aware that the matter was submitted based on the two acute injuries and the on-going work exertions associated with his job." Further, while the Commission did not explicitly refer to "cumulative trauma," it consistently referred to Cox's "work injuries," "work accidents," and "work activities" in its decision, suggesting that it was also aware of this evidence.

other words, compensation is required "if the industrial injury results in a permanent impairment that is aggravated by or aggravates a pre-existing permanent impairment *to any degree*." *Zimmerman v. Indus. Comm'n*, 785 P.2d 1127, 1131 (Utah Ct. App. 1989) (quoting *Second Injury Fund v. Streator Chevrolet*, 709 P.2d 1176, 1181 (Utah 1985)); *see also Hutchings*, 2016 UT App 160, ¶ 26 (concluding that the question of "whether the accident contributed to [the claimant's] current low back condition in any degree" correctly stated the medical causation standard).

¶19 We also agree with WCF's position that the medical causation standard requires a showing that the industrial accident caused a permanent aggravation of a pre-existing condition. Beginning with *Zimmerman* and *Virgin*, we have distinguished a permanent aggravation of a pre-existing condition, which meets the medical causation standard, from a temporary one, which does not. *See Zimmerman*, 785 P.2d at 1130–31; *see also Virgin*, 803 P.2d at 1288–89. In both cases, we held that the claimant failed to prove medical causation where the industrial accident that aggravated the pre-existing condition did not result in permanent impairment, but rather a temporary one. *See Zimmerman*, 785 P.2d at 1130–31; *Virgin*, 803 P.2d at 1288–90. "In other words, if a preexisting condition is only temporarily aggravated by an industrial accident, a claimant may only recover for the temporary aggravation, and not for unrelated symptoms or complications he may experience down the road." *Valdez v. Labor Comm'n*, 2017 UT App 64, ¶ 14, 397 P.3d 753.[4]

---

4. We disagree with Cox's contention that this court's decisions in *Zimmerman* and *Virgin* are inconsistent with our supreme court's decisions in *Provo City* and *Washington County*. *Compare Zimmerman v. Indus. Comm'n*, 785 P.2d 1127, 1130–31 (Utah Ct. App. 1989), *and Virgin v. Board of Review of Indus. Comm'n*, 803 P.2d 1284, 1288–90 (Utah Ct. App. 1990), *with Provo City v. Utah Labor Comm'n*, 2015 UT 32, ¶ 20, 345 P.3d 1242, *and Washington*

(continued…)

¶20 In sum, to recover for a medical condition, a claimant must show that (1) the industrial accident contributed in any degree to the claimant's condition, such as by aggravating a pre-existing condition, and (2) the aggravation is permanent, i.e., the claimant's medical condition never returned to baseline, meaning the claimant's condition immediately before the accident. *See Hutchings*, 2016 UT App 160, ¶ 26; *Zimmerman*, 785 P.2d at 1131.

¶21 Here, the Commission applied the incorrect legal standard for medical causation. The ALJ asked the medical panel, "Is there a medically demonstrable causal connection between the Petitioner's medical problem and the industrial accident as described in my Interim Order?" This question fails to unambiguously identify the correct legal standard. It could be read as asking whether the industrial accident contributed to Cox's medical condition in any degree (the correct question). But it could also be read as asking whether the industrial accident contributed to Cox's medical condition to some greater degree (the incorrect question). The medical panel seems to have answered the latter question. It concluded that Cox's condition

---

(…continued)

*County School Dist. v. Labor Comm'n*, 2015 UT 78, ¶ 43, 358 P.3d 1091. Cox's reliance on *Washington County* is inapposite because that case did not involve the causal standard for a pre-existing condition, but the causal standard for "a subsequent non-workplace injury." *See Washington County*, 2015 UT 78, ¶ 37. *Provo City* stated the general rule that "[u]nder the medical causation test, the employee must show that an accident is the but-for cause of the disability." *Provo City*, 2015 UT 32, ¶ 20. Both *Zimmerman* and *Virgin* are consistent with this general rule and apply it in the specific context of an aggravation of a pre-existing condition. *See id.; Zimmerman*, 785 P.2d at 1130–31; *Virgin*, 803 P.2d at 1288–90.

was not causally related to his work activities. Nevertheless, its report stated that the industrial accident "caused his already developed spinal condition to worsen." We read this statement to mean that the accident contributed to Cox's medical condition in some degree. The medical panel went on to conclude that the industrial accident did not "substantially" impair Cox's spinal function. Again, the question is not whether the accident contributed substantially to Cox's medical condition, but whether it contributed "in any degree." *See Hutchings*, 2016 UT App 160, ¶ 26.

¶22    The Commission perpetuated the error. Relying on the medical panel's conclusion on medical causation, it began by framing the issue for review as "whether [Cox] has shown that his work accidents were *the* medical cause of his low-back problems and need for surgery." (Emphasis added.) In reaching its conclusion, the Commission relied primarily on the medical panel's report, which made "clear that such injuries were not *the* medical cause of his current condition because they did not involve the same type of neurological symptoms and other severe findings that prompted the surgery." (Emphasis added.) On this basis, the Commission denied benefits and concluded that "the medical evidence shows that the relatively minor low-back strain [Cox] suffered from the work accidents is not *the* medical cause of any disability or his need for surgery." (Emphasis added.) But as we have explained, to be compensable, an industrial accident need not be *the* medical cause of the claimant's permanent medical condition; rather, it must have contributed to it in any degree. The Commission thus applied the incorrect medical causation standard by requiring that Cox show that his industrial accidents were *the* medical cause.

¶23    Moreover, the Commission failed to address the issue of whether the aggravation of the pre-existing condition was permanent or temporary. The Commission rejected Cox's argument that his "work injuries combined with his pre-existing condition to medically cause his current condition" on the

ground that the medical panel "recognized that [Cox's] work injuries negatively affected his spinal function, at least briefly, but also made it clear that such injuries were not the medical cause of his current condition . . . ." The Commission's cursory reference to the duration of the impact of Cox's work injuries to his spinal function is insufficient to show that it considered the issue of whether the aggravation was permanent or temporary. It is thus not clear that the Commission expressly determined whether the aggravation of the pre-existing condition was permanent or whether it returned to baseline. *See Zimmerman*, 785 P.2d at 1131.

¶24 Accordingly, the Commission denied Cox's claim for benefits based on an erroneous legal standard, and we set aside its order.

¶25 Cox asks us to further hold that, under the correct legal standard, the Commission lacked substantial evidence to support its conclusions. Rather than make this determination, we direct the Commission to "redetermine the matter under the correct legal standard." *See Covington v. Board of Review of Indus. Comm'n*, 737 P.2d 207, 211 (Utah 1987). We leave to the Commission's discretion the question of whether to "review the case based on the evidence already presented as reflected in the record," *see Hartwig v. Johnsen*, 2008 UT 40, ¶ 10, 190 P.3d 1242, or to receive further evidence under the correct legal standard.

CONCLUSION

¶26 We set aside the Commission's order and direct that it undertake further proceedings using the correct legal standard of medical causation.

_____