2020 UT App 2

## THE UTAH COURT OF APPEALS

JEFFERY RYAN NIELSEN,
Petitioner,
*v.*
LABOR COMMISSION, WALMART STORE, AND
NEW HAMPSHIRE INSURANCE COMPANY,
Respondents.

Opinion
No. 20180823-CA
Filed January 3, 2020

Original Proceeding in this Court

Stony V. Olsen and Michael G. Belnap, Attorneys
for Petitioner

David H. Tolk and Cody G. Kesler, Attorneys for
Respondents Walmart Store and New Hampshire
Insurance Company

JUDGE MICHELE M. CHRISTIANSEN FORSTER authored this Opinion,
in which JUDGES KATE APPLEBY and RYAN M. HARRIS concurred.

CHRISTIANSEN FORSTER, Judge:

¶1     Jeffery Ryan Nielsen requests that we set aside the Labor Commission Appeals Board's (the Board) decision denying his claim for workers' compensation benefits. We decline to disturb the Board's decision.

BACKGROUND

¶2     Nielsen was employed by Walmart between March 2011 and November 2016. In 2013, Nielsen suffered a low-back injury, outside of the employment context, while helping his landlord lift a refrigerator. After being released from

work for eight days to recover from the injury, Nielsen was reassigned from his position as an order-filler to a position as a forklift driver, though "he continued to assist with order pulling during the workday." In 2015, Nielsen consulted several physicians regarding his continuing low-back pain. An MRI conducted in August 2015 "showed a diffuse central-disc protrusion at the L5-S1 level with mild impingement on both exiting nerve roots," as well as "mild encroachment on the L5-S1 neural foramina with degenerative facet changes at the L4-5 level." Nielsen's treating physicians, Michael Derr and Critt Aardema, opined that Nielsen's employment "caused or aggravated his low back condition." Specifically, following an appointment in December 2016, Dr. Derr stated, "I feel that the patient's current work situation is contributing to his back symptoms," and following an appointment in February 2016, Dr. Derr again noted that Nielsen's job "likely contributed to his back pain since he was lifting frequently." Dr. Derr therefore concluded that there was a "medical causal relationship" between Nielsen's "industrial accident/cumulative trauma" and the back pain for which he was being treated.

¶3    On November 7, 2016, Nielsen filed an application for hearing requesting temporary total and permanent partial disability compensation on the ground that he sustained "repetitive injury" as a result of "harmful exposure" arising from his employment with Walmart. Walmart responded by asserting that Nielsen's injury was preexisting and that he could not establish that it was work-related.

¶4    On July 18, 2017, at Walmart's request, Dr. Richard Knoebel conducted a medical evaluation of Nielsen, in which he diagnosed Nielsen with "[n]onspecific low back pain without reasonable industrial cause, accident or injury." In conducting his examination, Dr. Knoebel had access to Nielsen's medical records through only the December 2015 visit. However, he also had a note that Nielsen had seen Dr. Derr in February

2016 and that Dr. Derr reported at that visit that "repetitive and cumulative trauma while working at Walmart" had contributed to his condition. Contrary to Dr. Derr's opinion, Dr. Knoebel believed Nielsen's lumbar condition to be degenerative rather than caused by a specific injury and attributed it to "nonindustrial" factors including smoking, obesity, and heredity. He opined that "[t]o a reasonable degree of medical probability," the MRI scan findings are "consistent with degenerative changes of the low back and low back pain without specific accident or injury" rather than industrial injury. He further explained that the MRI findings are "common in general population . . . and not specific to [Nielsen's] work"; that his work at Walmart was not the type that could be expected to "cause[], contribute[] to or permanently aggravate[]" a degenerative lumbar condition; and that such activities, "in fact, may be beneficial." He concluded that Nielsen had "0% industrial impairment" and was able to return to work.

¶5     An administrative law judge (ALJ) held a hearing on September 6, 2017, in which she entered interim findings of fact that included a list of treatments Nielsen had received. In discussing Dr. Derr's opinions, the ALJ referred only to the December 2015 medical visit, without mentioning the February 2016 visit, but cited the medical records of both visits and acknowledged Dr. Derr's opinion that Nielsen's injuries were caused by his work at Walmart. Due to the conflict in the medical opinions, the ALJ referred the case to a medical panel.

¶6     The medical panel reviewed "all of the medical records" it received, including seventy-two pages of "[i]ndexed medical records" from "7 healthcare providers and medical facilities." These records included the notes from both the December 2015 visit and the February 2016 visit with Dr. Derr. Like the ALJ's findings, the medical panel's recitation of Nielsen's medical history cited the December 2015 appointment with Dr.

Derr but not the February 2016 appointment. However, the medical panel acknowledged both Dr. Aardema's and Dr. Derr's opinions that Nielsen's work contributed to his pain. The medical panel also spoke directly with Nielsen and examined the ALJ's interim findings. The panel concluded that Nielsen's low back pain was not caused by his occupational exposure but was more likely the result of non-occupational factors, including his history of back pain, obesity, and decrease in physical activity.

¶7 The ALJ adopted the medical panel's determination, concluded that Nielsen's "March 2011 to August 2015 employment with Wal-Mart did not cause or aggravate his low back pain," and dismissed his application for hearing. Nielsen asked the Board to review the ALJ's decision, asserting that the ALJ erred in determining that his injuries were not medically caused by his work because the ALJ, Dr. Knoebel, and the medical panel failed to consider the records of the February 2016 visit with Dr. Derr, in which Dr. Derr identified Nielsen's "work at Walmart as at least a contributing cause." He also took issue with the ALJ's analysis of his injury under the Occupational Disease Act rather than the Workers' Compensation Act.

¶8 The Board observed that Dr. Derr's February 2016 report was duplicative of his earlier findings and that the medical panel clearly considered Dr. Derr's opinions. It further found that the "thorough and well-reasoned" opinion provided by the medical panel, based on "impartial and collegial review of all of Mr. Nielsen's relevant medical history," was more persuasive than Dr. Derr's opinion. The Board therefore determined that "the preponderance of the evidence shows that Mr. Nielsen's work activities did not medically cause his low-back problems" and that the result was the same regardless of whether Nielsen's injury was analyzed under the Occupational Disease Act or the Workers' Compensation Act. Nielsen now requests that we review the Board's decision.

ISSUES AND STANDARDS OF REVIEW

¶9 On review, Nielsen renews his argument that medical causation was established by Dr. Derr's February 2016 report[1] and asserts that the Board erred in determining that medical causation had not been established. "Whether the [Board] correctly or incorrectly denied benefits is a traditional mixed question of law and fact." *Jex v. Utah Labor Comm'n*, 2013 UT 40, ¶ 15, 306 P.3d 799 (quotation simplified). The level of deference to be granted such a decision depends on whether the question presented is more fact-like or more law-like. *Id.* The Board's determination regarding medical causation is highly fact-intensive and is therefore entitled to a high degree of deference. *Fogleman v. Labor Comm'n*, 2015 UT App 294, ¶ 38, 364 P.3d 756. We will therefore overturn it only if it is not supported by substantial evidence. *Id.* ¶¶ 25, 38 ("A finding is supported by substantial evidence when a reasonable mind might accept as

---

1. Nielsen also asserts that the members of the medical panel were not qualified to assess his back injury. But Nielsen did not object when the medical panel was appointed or when it submitted its report. He also did not raise this challenge in his motion for review before the Board. Rather, he raised it for the first time in his reply memorandum to the Board, and even at that point, he did no more than question the medical panel's expertise without pointing to anything to suggest that its members were not qualified. This argument is therefore unpreserved for our review, and we decline to consider it. *See Brown & Root Indus. Service v. Industrial Comm'n*, 947 P.2d 671, 677 (Utah 1997) ("[C]ourts should not reach issues on review that were not raised before an administrative agency . . . ."); *cf. Stevens v. LaVerkin City*, 2008 UT App 129, ¶ 31, 183 P.3d 1059 ("Where a party first raises an issue in his reply memorandum, it is not properly before the trial court and we will not consider it for the first time on appeal." (quotation simplified)).

adequate the evidence supporting the decision." (quotation simplified)).

ANALYSIS

¶10 Medical causation may be established where an "industrial injury results in a permanent impairment that is aggravated by or aggravates a pre-existing permanent impairment to any degree." *Cox v. Labor Comm'n*, 2017 UT App 175, ¶ 18, 405 P.3d 863 (quotation simplified).[2] In other words, "a claimant must show that (1) the industrial accident contributed in any degree to the claimant's condition, such as by aggravating a preexisting condition, and (2) the aggravation is permanent, i.e., the claimant's medical condition never returned to baseline, meaning the claimant's condition immediately before the accident." *Id.* ¶ 20.

¶11 Nielsen maintains that the Board exceeded its discretion in concluding that his work at Walmart did not contribute to his

---

2. One of the challenges to the ALJ's decision that Nielsen raised to the Board was that the ALJ analyzed the case under the Occupational Disease Act rather than the Workers' Compensation Act. The allegedly problematic portion of that analysis appears to be the ALJ's suggestion that the standard articulated in *Cox* is limited to industrial injuries rather than occupational diseases. However, in reviewing the ALJ's order, the Board employed the medical-causation test outlined in *Cox* and determined that Nielsen could not establish medical causation under that standard. Because we are tasked with reviewing the Board's decision rather than the ALJ's, *Wood v. Labor Comm'n*, 2012 UT App 26, ¶ 4, 270 P.3d 568, we likewise examine medical causation under *Cox* and find it unnecessary to address whether the analysis varies under the Occupational Disease Act.

back pain. He asserts that Dr. Knoebel's and the medical panel's reports were not reliable because they did not consider Dr. Derr's February 2016 report opining that Nielsen's work at Walmart contributed to his injuries.[3] But it is clear from the record that both Dr. Knoebel and the medical panel did consider the February 2016 report; Dr. Knoebel was aware of the report's conclusions, even though he did not have direct access to it, and the medical panel reported having access to and reviewing all seventy-two pages of the medical record, which included Dr. Derr's February 2016 report. Further, Dr. Derr's opinion in the February 2016 report was substantively identical to his opinion in the December 2015 report, which likewise opined that Nielsen's work at Walmart was "contributing to his back symptoms." It is clear that both Dr. Knoebel and the medical panel reviewed and considered Dr. Derr's opinion—they just disagreed with it.

¶12   Nielsen also asserts that Dr. Derr was the only one to acknowledge the contribution of his lumbar-spine injuries to his back pain, whereas the other professionals ignored the MRI results and attributed his symptoms to unknown causes. But both Dr. Knoebel and the medical panel reviewed the MRI and recognized that Nielsen had lumbar injuries; the difference between their conclusions and that of Dr. Derr was that they believed those injuries to have stemmed from non-industrial causes.

¶13   The Board explicitly considered the opinions of all physicians in the case but ultimately "assign[ed] more weight to

---

3. Nielsen also asserts that the ALJ did not consider Dr. Derr's opinion. In fact, the ALJ directly cited Dr. Derr's February 2016 report in both her interim findings and her final decision. But in any event, we are tasked with reviewing the Board's decision, not the ALJ's, *see supra* note 2, and the Board explicitly considered and rejected Dr. Derr's opinion.

the medical panel's conclusions" because it considered those conclusions to be "the product of impartial and collegial review of all of Mr. Nielsen's relevant medical history." *See Bade-Brown v. Labor Comm'n*, 2016 UT App 65, ¶ 13, 372 P.3d 44 (explaining that the Board "may choose to give certain evidence more weight than other evidence, so long as there is substantial evidence when viewed in light of the whole record to support its findings" (quotation simplified)). It accordingly accepted the medical panel's conclusion that Nielsen's pain was not caused or aggravated by his work at Walmart to any degree. *See Cox*, 2017 UT App 175, ¶ 18. The medical panel's and Dr. Knoebel's reports constitute substantial evidence supporting this decision, and we therefore defer to the Board's determination that Nielsen could not establish medical causation. *See Fogleman v. Labor Comm'n*, 2015 UT App 294, ¶ 38, 364 P.3d 756.

## CONCLUSION

¶14 Because substantial evidence supports the Board's determination that Nielsen's back pain was not medically caused by his work at Walmart to any degree, the Board's determination is entitled to deference. We therefore uphold the Board's denial of Nielsen's claim.

————————