2021 UT App 96

# THE UTAH COURT OF APPEALS

YESCO,
Petitioner,

*v.*

LABOR COMMISSION AND DAVID KELLER,
Respondents.

Opinion
No. 20200139-CA
Filed September 10, 2021

Original Proceeding in this Court

Bret A. Gardner and Dori K. Petersen, Attorneys
for Petitioner

Aaron J. Prisbrey, Attorney for Respondent
David Keller

JUDGE DIANA HAGEN authored this Opinion, in which JUDGES
GREGORY K. ORME and MICHELE M. CHRISTIANSEN FORSTER
concurred.

HAGEN, Judge:

¶1     For over sixteen years, David Keller worked on a daily basis installing heavy signs using a hammer drill and jackhammer. After undergoing wrist-fusion surgery on both arms, Keller filed for permanent total disability compensation from his employer, YESCO, claiming he had sustained wrist and shoulder injuries from the repetitive work activities. The Utah Labor Commission awarded Keller benefits. YESCO now seeks judicial review and argues the Commission erred in determining Keller's work activities medically caused his condition. We conclude that the Commission applied the correct legal standard and that substantial evidence supports its medical causation finding as to his wrist condition, but not his shoulder condition.

Accordingly, we set aside the Commission's decision and remand for further proceedings.

BACKGROUND[1]

¶2      In 1995, Keller began his career with YESCO working as a sign installer. For the next sixteen years, Keller's daily work activities included "wire stripping, turning wrenches, hand digging holes with a shovel, running a hammer drill on concrete buildings, [and using] jackhammers." The physical and repetitive nature of these activities "would frequently bind up and forcefully twist [Keller's] hands and wrists." And once in 2007, while lifting a sign, Keller "felt a pop" in his left arm accompanied by pain and a "visible bump." A medical exam revealed Keller had suffered "a torn [left] biceps muscle." After a month of work restrictions coupled with mild pain relievers, Keller returned to full duty.

¶3      Beginning in 2009, Keller began complaining to his general practitioner of wrist pain. Only the left wrist was causing pain at first, but within five months Keller complained of worsening pain in both wrists. Keller was eventually referred to an orthopedic surgeon for the wrist pain. The orthopedic surgeon noted Keller's pain had "gradually increased over the years" and was "not the result of an injury." After X-rays, the orthopedic surgeon diagnosed Keller with grade four arthritis in both wrists and opined that Keller's "type of work is definitely a large contributor if not sole cause of his condition." Upon consultation, Keller decided to move forward with surgery on the right wrist "due to the severity of pain and limitation"

---

1. "In reviewing an order from the Commission, we view the facts in the light most favorable to the Commission's findings and recite them accordingly." *JBS USA v. Labor Comm'n*, 2020 UT App 86, ¶ 2 n.1, 467 P.3d 905 (cleaned up).

caused by the arthritis, retaining the option "to proceed with fusion of the left wrist" when ready.

¶4 The orthopedic surgeon performed a "right wrist partial fusion" in May 2011. Keller found that the surgery improved "his strength and pain in the wrist," but he continued to have "trouble jam[m]ing a shovel into the ground, using that hand to pushup off the ground, [and] pushing hard on a wrench." Consequently, when Keller returned to YESCO for full-duty work that October, he took a desk job working as the assistant to the manager. Eight months into that role, in June 2012, Keller suffered a minor work injury when he tripped on an "outrigger pad[,] fell into [a] crane," hit his head, and cut his fingers. YESCO requested Keller undergo an evaluation, but Keller only complained of a minor headache and "pain in his neck and lower back," so he was released for work duty after ten days.

¶5 Keller, however, continued to experience "severe limiting" wrist pain. YESCO accommodated Keller's limitations by making him a "safety manager," which involved mostly supervisory work. But because the pain was "causing impairment on a daily basis," Keller returned to the orthopedic surgeon in July 2013 to proceed with left wrist fusion surgery. At first, Keller responded well to the surgery and the only complaints he voiced to the orthopedic surgeon were related to his left shoulder, not his wrist. Keller reported struggling for months with "sharp, occasionally radiating" left shoulder pain that made most movement and activities difficult. An MRI indicated tears in the shoulder and surrounding tendon. Then, Keller began reporting complications with his left wrist as well, such that he could "no longer open twist-off lids or open jars due to pain" and had to "use his fist to get up out of a chair as he [could not] use the palm of his hand due to pain in the wrist." At that point, the orthopedic surgeon advised proceeding with an additional surgery on the left wrist as well as surgery on the left shoulder. Keller underwent shoulder and wrist surgery in

August 2014 and in December he was authorized for full-duty work with "permanent restrictions" and referred for an impairment rating.

¶6    Keller obtained two medical evaluations: the first by YESCO's medical consultant and the second by Keller's general practitioner. YESCO's medical consultant reviewed Keller's medical history and provided a thorough examination to specifically evaluate Keller for impairments from his work accidents. The consultant determined that Keller suffered a 23% permanent partial impairment due to his wrist and shoulder injuries, but concluded the impairment was "nonindustrial" because none of Keller's surgeries or work restrictions were "work related conditions," i.e., related to Keller's work accidents; rather, the injuries were "age related." This conclusion was based on the fact that (1) "the symptoms and findings [were] the same in both wrists suggest[ing] a systemic rather than external cause for th[e] arthritis," and (2) the left wrist and shoulder pain began gradually and reached its peak more than two years after Keller left his position as a sign installer. Because YESCO's medical consultant found none of Keller's pain was "attributable to his work activities," the consultant considered him to be "at maximum medical improvement for any work-related condition." Conversely, Keller's general practitioner found a causal relationship between Keller's work and his wrist problems, explaining, "overuse at work has resulted in severe wrist arthritis." Based on twelve years observing Keller as his doctor, the general practitioner opined that Keller's "wrist cannot be used at all" because Keller's pain is severe enough that it would "constantly" interfere with his "attention and concentration needed to perform even simple work tasks."

¶7    Meanwhile, in 2014, YESCO closed its operations in the region and Keller was laid off. After termination, Keller filed for—and was awarded—permanent *partial* disability benefits due to his 23% impairment rating from the "repetitive motion"

wrist injuries that occurred while he was "[p]erforming his normal duties as a journeyman." The next year, Keller filed for permanent *total* disability compensation claiming he suffered "repetitive trauma" from his work with YESCO that resulted in injuries to "both wrists and left shoulder." This time, YESCO disputed that Keller's injuries were medically related to his work activities. Because the evidence was unclear on whether there existed a definite causal connection between Keller's work duties and his wrist and shoulder injuries, the administrative law judge (the ALJ) referred the case to a medical panel for evaluation.

¶8 The panel reviewed 178 pages of Keller's medical records, x-rays, and MRIs, and conducted a medical examination prior to creating its report. In its report, the panel determined that neither of Keller's work accidents (the 2007 bicep tear and the 2012 worksite fall) "caused or contributed" to the shoulder or wrist injuries. On the other hand, the panel opined that the "[r]epetitive forceful manual labor with trauma such as the drill binding, over many years, could have contributed to a degree to [Keller's] . . . arthritis and his left shoulder degeneration, along with all other life exposures." And the "repetitive forceful strains . . . could have contributed to [Keller's wrist arthritis] over the years, although it would not be the sole cause." But the panel opined that it was "more likely" that Keller's shoulder and wrist injuries were due to "chronic, age related" conditions or "a congenital predisposition." Relying on this report, the ALJ denied Keller benefits after finding that "Keller's conditions were degenerative and/or congenital and not caused by a work-related activity."

¶9 Keller subsequently filed a motion for review with the Commission. On review, the Commission "read[] the medical panel's report differently than the [ALJ] did." The Commission explained that "the appropriate inquiry" in determining medical causation "is whether the work accident contributed 'in any degree' to the injured worker's current condition for which

compensation is sought." (Quoting *Hutchings v. Labor Comm'n*, 2016 UT App 160, ¶ 26, 378 P.3d 1273.) From the Commission's perspective, the panel's report "medically causally connect[ed] [Keller's] work activities to his overall wrist and left-shoulder conditions." Accordingly, the Commission remanded the case to the ALJ for further consideration of whether Keller qualified for permanent total disability benefits. The ALJ awarded Keller benefits on remand, largely echoing the Commission's conclusions regarding medical causation.

¶10 YESCO requested the Commission review the ALJ's benefits award to Keller, arguing the ALJ erred in determining medical causation existed. The Commission affirmed the award, reiterating that Keller's work activities medically caused his injuries. First, the Commission determined the panel's report, "as a whole," was unequivocal and unambiguous in establishing medical causation. While the panel stated that Keller's two workplace accidents "did not contribute" to Keller's current injuries, it acknowledged that his repetitive work activities "could have contributed" to his current injuries. Second, the Commission found that, by opining that Keller's work activities were not "the sole cause" of Keller's wrist injuries, the medical panel had implied that the work activities were at least a contributing cause. Finally, the panel relied on the orthopedic surgeon's opinion rather than YESCO's medical consultant because the consultant failed to evaluate Keller's injuries as resulting from repetitive trauma and instead focused on the work accidents. The Commission concluded by holding that the opinions of "the medical panel and [the orthopedic surgeon] represent a preponderance of the evidence" establishing medical causation. It further stated that, "[e]ven if the medical panel's opinion were to be disregarded," medical causation was met "based on [the orthopedic surgeon's] opinion and treatment records." Because YESCO raised no challenges to the award of benefits other than the medical causation determination, the Commission affirmed the ALJ's benefit award.

¶11 Keller subsequently filed an abstract with the district court to enforce the judgment. YESCO objected to issuance of the abstract of award and requested a stay. The stay was denied and the abstract of judgment against YESCO was issued.

¶12 YESCO now seeks judicial review.

ISSUE AND STANDARDS OF REVIEW

¶13 YESCO argues that the Commission erred in determining that Keller's work activities medically caused his shoulder and wrist injuries. This argument has two components: YESCO contends that the Commission "erroneously interpreted the legal standard for finding medical causation" and that it erred in finding that medical causation had been met. Whether the Commission applied the correct legal standard is a question of law we review for correctness. *See Cox v. Labor Comm'n*, 2017 UT App 175, ¶ 12, 405 P.3d 863. But whether the Commission properly found that medical causation exists is a question of fact we review for substantial evidence. *See Benge v. Cody Ekker Constr.*, 2019 UT App 164, ¶ 9, 451 P.3d 667. In reviewing for substantial evidence, we defer to the agency "if there is a quantum and quality of relevant evidence that is adequate to convince a reasonable mind to support a conclusion." *Provo City v. Utah Labor Comm'n*, 2015 UT 32, ¶ 8, 345 P.3d 1242 (cleaned up).

ANALYSIS

¶14 In this case, we must determine whether the Commission properly granted Keller's claim for permanent total disability benefits. Under the Utah Workers' Compensation Act, an employee is entitled to compensation for a work-induced permanent total disability by proving six required elements, one of which is relevant here: that an industrial accident directly

caused the employee to suffer a permanent total disability.[2] *See Provo City v. Utah Labor Comm'n*, 2015 UT 32, ¶ 6, 345 P.3d 1242 (citing Utah Code Ann. § 34A-2-413(1)(b)–(c)). In some instances, this "direct cause" element may encompass both medical and legal causation, *see id.* ¶¶ 20–21, but only medical causation is at issue here. YESCO asserts the Commission misinterpreted and misapplied the legal standard for establishing medical causation. We begin by evaluating whether the Commission correctly interpreted the medical causation standard and—after concluding its interpretation was correct—we turn to whether the Commission properly found medical causation was met for both Keller's wrist condition and his shoulder condition.

## I. Legal Standard for Medical Causation

¶15    The legal standard for proving medical causation requires an employee to show that an industrial accident was "*a* cause" of the condition or injury requiring treatment. *See Utah Am. Energy Inc. v. Labor Comm'n*, 2021 UT App 33, ¶ 28, 484 P.3d 1195 (cleaned up); *see also Hutchings v. Labor Comm'n*, 2016 UT App 160, ¶ 18, 378 P.3d 1273. A correct formulation of this standard asks whether the industrial accident contributed to the employee's medical condition "in any degree, such as by aggravating a preexisting condition," or in this case, by

---

2. An industrial accident is not limited to a single incident but can result from repetitive work activities. *See Smith's Food & Drug, Inc. v. Labor Comm'n*, 2011 UT App 67, ¶¶ 8, 12, 14, 250 P.3d 1008. The ALJ concluded that the "cumulative and repetitive trauma from heavy manual labor" installing signs constituted an industrial "accident" for the purposes of Keller's claim, and YESCO has not challenged that determination on review. We therefore evaluate Keller's claim under a repetitive trauma theory.

aggravating other contributing non-industrial factors. *See Cox v. Labor Comm'n*, 2017 UT App 175, ¶ 20, 405 P.3d 863.

¶16 Here, the Commission applied the correct legal standard. It determined medical causation by asking whether Keller's "repetitive trauma represents one of the medical causes of his conditions." While Keller may have suffered from other contributing non-industrial factors, in assessing medical causation, the Commission reviewed the record to determine whether Keller's repetitive work activities contributed to his condition in any way. The standard applied by the Commission is entirely consistent with the medical causation standard articulated in our case law. *See Utah Am. Energy*, 2021 UT App 33, ¶ 28; *Cox*, 2017 UT App 175, ¶ 18.

¶17 YESCO asserts that the Commission effectively applied a lower medical causation standard by requiring only a speculative causal connection because it evaluated the medical evidence to see if the industrial accident "may" have or "possibly" contributed to Keller's injuries. But YESCO fails to direct us to language in the Commission's decision articulating this improper medical causation standard. In fact, a review of the record reveals the Commission expressly rejected the notion that medical causation can be met through "equivocal and ambiguous statements." And at the same time, the Commission demonstrated the correct standard by pointing to evidence establishing an "affirmative" link between the industrial accident and Keller's conditions. In sum, we see no error in the Commission's interpretation of the medical causation standard.

## II. Substantial Evidence

¶18 Having determined that the Commission applied the correct legal standard, we will uphold its finding of medical causation so long as that finding is supported by substantial evidence. The question of whether medical causation exists is "one of fact . . . best informed by expert testimony or evidence."

*Valdez v. Labor Comm'n*, 2017 UT App 64, ¶ 10, 397 P.3d 753. As the "ultimate factfinder," it is the Commission's role to weigh the evidence, resolve any conflicts, and draw reasonable inferences therefrom in finding medical causation. *See JP's Landscaping v. Labor Comm'n*, 2017 UT App 59, ¶¶ 13–14, 397 P.3d 728.

¶19 So long as the record contains substantial evidence showing the Commission's finding of causation was "based on a reasonable medical probability rather than on a medical possibility," we will defer to the Commission. *Danny's Drywall v. Labor Comm'n*, 2014 UT App 277, ¶¶ 9, 11, 16–17, 339 P.3d 624. Substantial evidence is "more than a mere scintilla of evidence though something less than the weight of the evidence." *Martinez v. Media-Paymaster Plus/Church of Jesus Christ of Latter-day Saints*, 2007 UT 42, ¶ 35, 164 P.3d 384 (cleaned up). "Merely pointing to conflicting facts and evidence is insufficient to undermine substantial evidence supporting the finding." *Utah Am. Energy Inc. v. Labor Comm'n*, 2021 UT App 33, ¶ 30, 484 P.3d 1195.

¶20 Keller indicates that he sustained two permanent injuries from his repetitive work activities: wrist damage and shoulder damage. And the Commission agreed, finding that "Keller's repetitive trauma at work is medically causally connected to his bilateral-wrist and left-shoulder problems." We therefore proceed to evaluate whether substantial evidence supports the Commission's medical causation finding for each injury.

¶21 We have no trouble concluding that substantial evidence supports the Commission's finding that Keller's work activities medically caused his wrist injuries. The orthopedic surgeon opined that Keller's "type of work is definitely a large contributor if not sole cause of his [wrist] condition." And Keller's general practitioner of twelve years opined that "overuse at work . . . resulted in [Keller's] severe wrist arthritis."

These medical opinions amount to substantial evidence supporting the Commission's finding of causation.

¶22 YESCO contends that "the medical panel expressed a conclusion contrary to a finding of causation" and unless its conclusions are "flawed or contradictory," "the Commission should rely on the medical panel's report and conclusions." Contrary to YESCO's argument, the Commission was not bound by the medical panel's report regarding medical causation. A medical panel report can inform the Commission's findings, but the report is not binding on the Commission; the Commission is tasked with making factual determinations based on all the evidence in the record. *Hutchings v. Labor Comm'n*, 2016 UT App 160, ¶ 23, 378 P.3d 1273. In any event, as the Commission noted, the "clear inference" from the medical panel's statement that Keller's repetitive work activities were not "the sole cause" but "could have contributed" to his wrist injury is that Keller's work activities may well have been *a* cause of his wrist condition. *See Cox*, 2017 UT App 175, ¶ 18. This assessment, combined with the other opinions in the record, supports the Commission's medical causation finding as to the wrist condition based on a "reasonable medical probability." *See Danny's Drywall*, 2014 UT App 277, ¶ 9.[3]

---

3. YESCO also points to its medical consultant's opinion—that Keller's shoulder and wrist injuries are caused by age-related degeneration—to support its argument that the panel did not find medical causation. The Commission assigned little weight to YESCO's medical consultant because he evaluated only whether Keller's injuries were caused by work accidents and not whether they resulted from repetitive trauma. YESCO has not challenged the Commission's assessment of its consultant, and in any event, "the Commission has the discretion to decide what weight to give conflicting opinions, and we are in no position to

(continued…)

¶23 However, there is insufficient evidence to support the Commission's finding that Keller's repetitive work activities medically caused his shoulder condition. Neither the general practitioner nor the orthopedic surgeon ever indicated that the shoulder condition resulted from Keller's repetitive work activities. The medical panel did state that "years of repetitive traumatic heavy labor . . . could have contributed to and or accelerated [Keller's] left shoulder degeneration," but that "[r]epetitive trauma would not be as likely to be significantly contributory to his left shoulder condition, and in fact would be more likely to be contributory to a condition in his dominant right side, which condition does not exist on the right." Notably, the panel highlighted that the conditions necessitating the shoulder surgery were "largely consistent with age and natural degeneration." The record evidence establishes only a "medical possibility" that Keller's repetitive work activities caused his shoulder condition instead of the required "reasonable medical probability." *See id.* Therefore, we conclude that substantial evidence supports the Commission's finding of medical causation as to Keller's wrist condition but not as to the shoulder condition.

¶24 Nonetheless, we cannot determine on this record whether the non-industrial nature of the shoulder injury impacts Keller's entitlement to permanent disability benefits. The Commission has not yet assessed whether Keller meets each element for a permanent total disability award where the causal relationship to Keller's work activities has been established only with respect to the wrist condition. In particular, the Commission did not consider whether the industrial wrist condition alone qualifies as

---

(…continued)
reweigh the evidence" on review. *Wright v. Labor Comm'n*, 2021 UT App 43, ¶ 35, 489 P.3d 211, *petition for cert. filed*, June 16, 2021 (No. 20210419).

a significant impairment under Utah Code section 34A-2-413(1)(b)(i). *See Fogleman v. Labor Comm'n*, 2015 UT App 294, ¶¶ 21–22, 45, 364 P.3d 211 (holding that the significant-impairment element for permanent total disability compensation must be restricted to analyzing conditions or injuries that are causally related to the work accident). We therefore set aside the award and remand to the Commission to determine, in light of this opinion, whether Keller is entitled to permanent total disability benefits.[4] *See Flying Diamond Oil Corp. v. Newton Sheep Co.*, 776 P.2d 618, 622 (Utah 1989) (explaining that the absence of necessary findings "on all material issues . . . usually requires remand" because the appellate court cannot "properly resolve the case on the record before it"). We express no opinion on this determination and leave it to the Commission to decide in the first instance.

## CONCLUSION

¶25 The Commission applied the correct legal standard for medical causation. But substantial evidence supports only the Commission's finding that Keller's repetitive work activities caused his wrist condition, not his shoulder condition. We

---

4. YESCO also argues that the Commission erred in issuing the abstract to enforce the award and denying its motion to stay the award pending appellate review. Because we have set aside the Commission's award, the abstract to enforce the award is void, rendering those issues moot. *See Utah Transit Auth. v. Local 382 of Amalgamated Transit Union*, 2012 UT 75, ¶ 15, 289 P.3d 582 (explaining that an issue is moot where "there remains no meaningful relief that this court could offer"). Accordingly, we do not address them. *See id.* ¶ 14 ("Where the issues that were before the trial court no longer exist, the appellate court will not review [them]." (cleaned up)).

therefore set aside Keller's permanent total disability award on that basis and remand this matter to the Commission for further proceedings consistent with this opinion.

———————