**2018 UT App 228**

## THE UTAH COURT OF APPEALS

RODNEY BENSON,
Petitioner,

*v.*

UTAH LABOR COMMISSION, UTAH DIVISION OF ALCOHOLIC
BEVERAGE CONTROL, AND WCF MUTUAL INSURANCE COMPANY,
Respondents.

Per Curiam Opinion
No. 20170872-CA
Filed December 20, 2018

Original Proceeding in this Court

Rodney Benson, Petitioner Pro Se

Matthew J. Black, Attorney for Respondents Utah
Division of Alcoholic Beverage Control and
WCF Mutual Insurance Company

Before JUDGES GREGORY K. ORME, MICHELE M. CHRISTIANSEN
FORSTER, and KATE APPLEBY.[1]

PER CURIAM:

¶1 Rodney Benson seeks judicial review of the Labor Commission's decision denying his claim for benefits under the Workers' Compensation Act. We decline to disturb the Commission's decision.

¶2 Benson initially argues that he was constitutionally entitled to a jury trial during the formal adjudicative proceeding before the Labor Commission. However, "[t]he right to jury trial under article I, section 10 [of the Utah Constitution] extends only

---

1. Judge Kate A. Toomey has resumed the use of her birth name and is now known as Judge Kate Appleby.

to actions that were triable to juries when the Constitution was adopted." *Jensen v. State Tax Comm'n*, 835 P.2d 965, 969 (Utah 1992). The Labor Commission's procedures here are "solely creatures of statute and were not cognizable as civil actions at common law." *Id.* As a result, Benson was not entitled to a jury trial in the Labor Commission proceedings. *See id.; see also Curtis v. Loether*, 415 U.S. 189, 194 (1974) (noting that "the Seventh Amendment is generally inapplicable in administrative proceedings, where jury trials would be incompatible with the whole concept of administrative adjudications").

¶3 Benson next asserts that the Labor Commission violated various provisions of both the federal and state constitutions during the course of the proceedings. Benson fails to adequately brief the issue. A party must support his argument on judicial review "with citations to legal authority and the record" and with "reasoned analysis" explaining "why the party should prevail." Utah R. App. P. 24(a)(8). "A brief is inadequate when it merely contains bald citation[s] to authority [without] development of that authority and reasoned analysis based on that authority. As we have repeatedly noted, we are not a depository in which [a party] may dump the burden of argument and research." *Smith v. Four Corners Mental Health Center, Inc.*, 2003 UT 23, ¶ 46, 70 P.3d 904 (quotation simplified). "An inadequately briefed claim is by definition insufficient to discharge an appellant's burden to demonstrate trial court error." *Simmons Media Group, LLC v. Waykar, LLC*, 2014 UT App 145, ¶ 37, 335 P.3d 885. Here, Benson lists various constitutional provisions he claims that the Legislature violated in creating the Labor Commission, or that the Labor Commission violated during the adjudicative process. He also states that "each and every point made in this brief illustrates a violation" of his constitutional rights. However, Benson fails to develop any authority or reasoned analysis as to how each of these "points" is a violation of a constitutional provision. As a result, Benson has failed to

carry his burden of demonstrating any error on the part of the Labor Commission.

¶4     Benson argues that the Legislature and the executive branch, including the Labor Commission and the Governor's Office, are biased against workers in general, and demonstrated bias against him in particular. In making this argument Benson sets forth numerous alleged theories of bias. Many of these theories concern Benson's belief that there are systemic issues concerning how the Labor Commission resolves complaints filed by injured workers. However, because such issues involve policy considerations, and Benson has failed to demonstrate any constitutional infirmities in the administrative process, they can be resolved only by the Legislature. *See University of Utah v. Shurtleff*, 2006 UT 51, ¶ 53, 144 P.3d 1109.

¶5     Benson also raises numerous points of contention that he believes demonstrate that the Labor Commission was biased against him individually. However, a closer examination of his arguments demonstrates that he is not arguing that the Administrative Law Judge (the ALJ) or the Appeals Board of the Labor Commission was actually biased against him. Rather, he is arguing that they did not treat him fairly.[2] However, in so arguing, Benson fails to cite any applicable statute or administrative rule that was not followed during the proceedings in the Labor Commission. Further, as stated above, he fails to properly develop any argument that the alleged "biases" on the part of anyone at the Labor Commission violated either the state or federal constitutions. We must, therefore, due to the absence of any argument to the contrary, assume that the Labor Commission complied with the procedural requirements

---

2. This court cannot find any specific claim in which Benson argues that the ALJ or the Appeals Board had a specific bias against Benson that would have required recusal.

provided by the statute and administrative rules. Because we assume that the Labor Commission complied with all applicable statutes and rules, Benson cannot demonstrate that the Labor Commission treated him any differently than any other person seeking benefits. As such, Benson fails to demonstrate that the Labor Commission was biased against him.

¶6 The arguments raised by Benson could be construed as a claim that the Labor Commission erred in failing to award him benefits. The Labor Commission's decision to award benefits is a mixed question of fact and law. *Danny's Drywall v. Labor Commission*, 2014 UT App 277, ¶ 9, 339 P.3d 624. "The standard of review we apply when reviewing a mixed question can be either deferential or non-deferential" depending upon whether the question is more fact-like or law-like. *Jex v. Labor Commission*, 2013 UT 40, ¶ 15, 306 P.3d 799 (quotation simplified). "Due to the fact-intensive inquiry involved at the agency level" in determining whether it is appropriate to award benefits, including credibility determinations that an appellate court is "in an inferior position to review," cases like these not lend themselves "to consistent resolution by a uniform body of appellate precedent." *Carbon County v. Workforce Appeals Board*, 2013 UT 41, ¶ 7, 308 P.3d 477 (quotation simplified); *see also Hutchings v. Labor Commission*, 2016 UT App 160, ¶ 23, 378 P.3d 1273 (stating that "[m]edical causation is fundamentally a factual determination"). This decision is therefore more fact-like, and deference to the Labor Commission's decision is warranted.

¶7 Benson asserts that his need for a knee replacement surgery was the result of a work-related accident and was not related to a prior motorcycle accident. In so arguing, Benson points this court to various facts and evidence to support his argument. However, this court has previously concluded that a petitioner must do more than simply point to evidence that supports his argument, the petitioner must "demonstrate that the Commission's medical causation finding itself is not

supported by substantial evidence." *Hutchings*, 2016 UT App 160, ¶ 31. Here, there is substantial evidence in the record from which the Labor Commission could have reasonably found that Benson's ongoing knee issue was not caused by the industrial accident, but rather by a motorcycle accident that predated the industrial accident, coupled with degenerative changes resulting from age and weight.

¶8     A medical panel's report alone may provide substantial evidence to support the Labor Commission's determination of medical causation. *See id.* ¶ 32. Here, the medical panel reviewed Benson's relevant medical records, considered Benson's diagnostics, and performed its own examination of Benson. After reviewing the totality of the evidence, the medical panel determined that Benson's industrial injury was a temporary aggravation of his pre-existing condition and that aggravation was fully resolved within a year of the industrial accident. The panel added that because of the prior motorcycle accident and the natural progression of degeneration due to age and weight, Benson's current knee problems would likely have been the same even if the work accident had never occurred. The medical panel's report was comprehensive and supported by various medical records generated during the history of Benson's knee problems. Thus, the medical panel's report constituted substantial evidence in support of the Labor Commission's decision. Because substantial evidence supported the Labor Commission's decision, Benson has failed to demonstrate that the Labor Commission abused its discretion.

¶9     For the above reasons, we decline to disturb the Labor Commission's order.

———————