2021 UT App 33

# THE UTAH COURT OF APPEALS

UTAH AMERICAN ENERGY INC. AND ROCKWOOD CASUALTY
INSURANCE COMPANY INC.,
Petitioners,
*v.*
LABOR COMMISSION AND ADAM PILLING,
Respondents.

Opinion
No. 20190800-CA
Filed March 18, 2021

Original Proceeding in this Court

Bret A. Gardner and Kristy L. Bertelsen,
Attorneys for Petitioners

James M. Elegante, Dayton L. Hall,
Zachary C. Lindley, and Virginius Dabney,
Attorneys for Respondent Adam Pilling

JUDGE RYAN M. HARRIS authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN FORSTER
and DIANA HAGEN concurred.

HARRIS, Judge:

¶1     The Labor Commission of Utah (the Commission) awarded Adam Pilling permanent total disability benefits after he sustained a head and neck injury at work. His employer, Utah American Energy Inc. (UAE), and its insurer seek judicial review of the Commission's award, asserting that Pilling did not sustain a significant industrial impairment that directly caused his permanent total disability. We decline to disturb the Commission's award.

BACKGROUND[1]

¶2 Early one morning in May 2007, Pilling—a heavy-duty diesel mechanic employed by UAE—hurried into a mine to work on some machinery. In his haste, Pilling failed to see a steel beam extending downward from the ceiling, and he struck the top of his head on it. Even though Pilling was wearing a hard hat, the blow knocked him to the ground. A coworker drove Pilling out of the mine and he was able to finish his shift, but not without persistent pain. In this opinion, we refer to these events as the "Work Accident."

¶3 Before the Work Accident, Pilling suffered from chronic low back and hip pain, but in the days following the Work Accident, Pilling felt neck, back, jaw, and upper extremity pain that he had not experienced before, so he reported the accident to UAE the following day and sought medical attention. A local physician diagnosed Pilling with cervical radiculitis,[2] and recommended physical therapy and other tests. The tests showed nothing out of the ordinary and, for a while, Pilling

---

1. "In reviewing an order from the Commission, we view the facts in the light most favorable to the Commission's findings and recite them accordingly." *JBS USA v. Labor Comm'n*, 2020 UT App 86, n.1, 467 P.3d 905 (quotation simplified). And "due to the extensive medical records presented in the record, we discuss only those injuries and medical diagnoses necessary to understand the issues presented." *See Fogleman v. Labor Comm'n*, 2015 UT App 294, n.1, 364 P.3d 756 (quotation simplified).

2. Cervical radiculitis or radiculopathy "describes a compressed nerve root in the neck." *Radiculopathy*, Johns Hopkins Medicine, https://www.hopkinsmedicine.org/health/conditions-and-diseas es/radiculopathy [https://perma.cc/D9QW-AFQP].

continued regular work duty with UAE while undergoing physical therapy and chiropractic treatment for his symptoms.

¶4    In early 2008, Pilling sought additional treatment for continuing neck, back, and upper extremity pain, as well as pain in his jaw, which physicians diagnosed as temporomandibular joint (TMJ) dysfunction. On referral, a neurosurgeon in Salt Lake City assessed Pilling's record, and noted that the MRI scans were normal but that X-ray images suggested there had been a slight cervical compression fracture "that has gone on to heal, and heal well." Although Pilling was still complaining of cervical and secondary jaw pain, the neurosurgeon found "nothing structural in [Pilling's] spine to indicate a reason for his having ongoing problems," and recommended physical therapy. Later that year, a neurologist retained by UAE's insurer evaluated Pilling, and eventually opined, in October 2009, that "no further treatment was necessary as a result of the [Work Accident]."

¶5    In the meantime, UAE laid Pilling off in March 2008. Pilling soon found another job as a heavy-duty diesel mechanic, but after a few months he quit due to continued complaints of pain. After that, Pilling attempted to continue working in various occupations through July 2009, but due to complaints of ongoing pain he has not been gainfully employed since.

¶6    Over the next few years, Pilling sought treatment and underwent several surgeries related to his preexisting low back and hip issues. But he also continued to seek treatment, including fusion surgery on his spine, that he asserted was necessary for his neck, back and upper extremity issues caused by the Work Accident. In previous proceedings before the Commission, the parties entered into a joint stipulation, approved in the form of an order by the Commission, which provided that the spinal surgery and certain other treatment was related to the Work Accident, and that the surgery—as well as temporary total and permanent partial disability benefits—

should be paid for by UAE and its insurer. In particular, the parties stipulated that Pilling had "permanent work injuries [that] would adversely affect his ability to maintain gainful employment." The propriety of the earlier Commission rulings regarding temporary total and permanent partial disability benefits is not at issue here.

¶7　One of the issues presented in the earlier proceedings, and the main issue presented here, is how much of Pilling's disability is caused by his preexisting hip and low back issues, and how much is caused by the Work Accident. Over the course of several years, physicians who treated and examined Pilling grappled with that question, and came to various conclusions. For example, while one doctor opined that Pilling's spinal issues from the Work Accident were the "direct cause" of his inability to work, another opined that any work restrictions related to "bending, stooping, squatting, lifting from floor level, sitting, and walking, would be unrelated to the [Work Accident]." Various doctors assessed Pilling's cervical spine and TMJ impairments—the ones related to the Work Accident—at anywhere from an 8% to 24% impairment rating. Pilling was also given a 19% impairment rating for issues related to his preexisting low back and hip problems.

¶8　In 2014, and as amended in 2015, Pilling filed another claim with the Commission, this time seeking an award of permanent total disability benefits, and claiming that the Work Accident rendered him permanently unable to work. The matter proceeded to an evidentiary hearing before an administrative law judge (ALJ), and at the hearing both sides presented starkly contrasting evidence from experts regarding the cause of Pilling's work restrictions and disabilities. Pilling's medical expert opined that Pilling had no significant history of hip problems, and only "a vague history of back problems as many . . . workers may have," and concluded that Pilling's work limitations were "obviously caused by the [Work Accident]."

Pilling's vocational expert concluded that Pilling's work impairments made him unable to "perform any work reasonably available" and that he was "not a viable candidate for vocational rehabilitation." On the other hand, UAE's medical expert testified that Pilling's hip and spine problems were "degenerative" and pre-dated the Work Accident, and its vocational expert opined that Pilling was qualified for, and capable of performing, a number of employment opportunities available near Pilling's home. Due to the "conflicting medical opinions," the ALJ referred the matter to a medical panel.

¶9    After reviewing Pilling's medical records, the panel ultimately found that the Work Accident "medically caused" Pilling's cervical spine and TMJ injuries but did not exacerbate his preexisting hip and low back problems. The panel found that the Work Accident caused Pilling to suffer a 16% whole-person impairment: 13% from the cervical spine injury, and 3% from the TMJ injury. These injuries, according to the panel, were exclusively responsible for one work restriction—inability to do overhead work or reach above shoulder height—and, in combination with his preexisting issues, were partially responsible for ten other work restrictions. The panel opined that Pilling "was restricted from returning to work as a heavy-equipment operator due to both his industrial and non-industrial conditions."

¶10    After considering all of the evidence presented, the ALJ found the medical panel's opinion "persuasive" and accordingly concluded that Pilling had established an entitlement to permanent total disability benefits. Specifically, the ALJ determined that Pilling's injuries were "sufficient to support a finding of significant impairment" because he "suffered a 16% whole person impairment caused by his industrial cervical and TMJ conditions and that he has medical and functional limitations as a result of those work caused injuries." The ALJ further concluded that Pilling's injuries were the direct cause of

his permanent total disability, stating that the presence of preexisting medical conditions "that were not caused by the accident [and] that interact with the work injury does not change the evidence that it was his work injury that caused him to become unable to work."

¶11 UAE appealed the ALJ's ruling to the Commission, and asserted that Pilling had not demonstrated a "significant impairment" from the Work Accident that was the "direct cause" of his claimed permanent total disability. The Commission rejected UAE's arguments. The Commission acknowledged Pilling's preexisting conditions, but concluded that "[t]he fact that Mr. Pilling's non-industrial conditions also contribute to many of his limitations does not defeat the direct causal connection between the [W]ork [A]ccident and his permanent total disability," and stated that it "does not view the limitations of Mr. Pilling's concurrent, non-industrial hip and low-back problems to be intervening factors that would sever the direct causal connection because his work-related limitations are still present." Ultimately, the Commission affirmed the ALJ's award of permanent total disability benefits to Pilling.

ISSUES AND STANDARDS OF REVIEW

¶12 UAE now seeks judicial review of the Commission's award, specifically challenging two aspects of the Commission's final determination. With regard to both challenges, UAE assails the Commission's interpretation of statutory provisions as well as its application of law to the facts. We review the Commission's interpretation of statutory provisions for correctness. *See Oliver v. Utah Labor Comm'n*, 2017 UT 39, ¶¶ 13, 28–30, 424 P.3d 22. But the Commission's application of law to the facts constitutes a mixed question of law and fact, *see Provo City v. Utah Labor Comm'n*, 2015 UT 32, ¶ 17, 345 P.3d 1242, which we review "either deferential[ly] or non-deferential[ly], depending on whether the fact-finder is in a superior position to

decide the question than the appellate court," *Davis v. Labor Comm'n*, 2018 UT App 71, ¶ 5, 424 P.3d 1105 (quotation simplified). Because the challenged issues in this case turn on fact-intensive analyses, we apply the more deferential "substantial-evidence standard." *See Fogleman v. Labor Comm'n*, 2015 UT App 294, ¶¶ 23–25, 364 P.3d 756 (reviewing a "significant impairment" determination under the substantial evidence standard); *see also Hutchings v. Labor Comm'n*, 2016 UT App 160, ¶ 23, 378 P.3d 1273 (stating that "[m]edical causation is fundamentally a factual determination" that is reviewed under the substantial evidence standard). "A decision is supported by substantial evidence if there is a quantum and quality of relevant evidence that is adequate to convince a reasonable mind to support a conclusion." *Provo City*, 2015 UT 32, ¶ 8 (quotation simplified). "In conducting a substantial evidence review, we do not reweigh the evidence and independently choose which inferences we find to be the most reasonable." *Id.* (quotation simplified). "Instead, we defer to an administrative agency's findings because when reasonably conflicting views arise, it is the agency's province to draw inferences and resolve those conflicts." *Id.* (quotation simplified).

ANALYSIS

¶13     In this case, we are asked to evaluate Pilling's claim to permanent total disability benefits. An employee's entitlement to such benefits is governed by two statutory provisions that, "taken as a whole," require "workers to prove six elements." *See Provo City*, 2015 UT 32, ¶ 6 (citing Utah Code Ann. § 34A-2-413(1)(b), (c)). UAE does not contest Pilling's ability to prove four of the necessary elements, and places in question just two of them. First, UAE argues that Pilling failed to demonstrate that he "sustained a significant impairment or combination of impairments as a result of the industrial accident . . . that gives rise to the permanent total disability entitlement." *See* Utah Code

Ann. § 34A-2-413(1)(b)(i) (LexisNexis 2007). Second, UAE argues that Pilling failed to establish that the Work Accident was "the direct cause of [his] permanent total disability." *See id.* § 34A-2-413(1)(b)(iii). We analyze each of these two elements, in turn.

I

¶14    We begin by addressing UAE's contention that the Commission misinterpreted and misapplied Utah Code section 34A-2-413(1)(b)(i) in determining that Pilling sustained a "significant impairment" as a result of the Work Accident. We first discuss the Commission's interpretation of that provision, and conclude that the Commission's interpretation was correct. We then discuss the Commission's application of the law to the facts, and conclude that substantial evidence supports the Commission's determination.

A

¶15    "When confronted with questions of statutory interpretation," our goal is "to evince the true intent and purpose of the Legislature." *Bryner v. Cardon Outreach, LLC*, 2018 UT 52, ¶ 9, 428 P.3d 1096 (quotation simplified). In attempting to ascertain that intent, we first look at the language the legislature used. *Id.* (stating that "[t]he first step of statutory interpretation is to look to the plain language"). If that language is "plain and unambiguous," then we will "not look beyond the same to divine legislative intent." *Id.* (quotation simplified). To ascertain the plain meaning of statutory text, we read it "in light of its linguistic, structural, and statutory context." *Oliver v. Utah Labor Comm'n*, 2017 UT 39, ¶ 20, 424 P.3d 22 (quotation simplified). Each provision is considered in the context of the overall statutory scheme, *see Bryner*, 2018 UT 52, ¶ 10, and in the context of its subsection's grammatical structure, *see id.* ¶ 12 (stating that "the whole-text canon calls on the judicial interpreter to consider the entire text, in view of its structure and of the physical and logical relation of its many parts" (quotation simplified)). A

statute "should be construed so that no part or provision will be inoperative or superfluous, void or insignificant, and so that one section will not destroy another." *State v. Jeffries*, 2009 UT 57, ¶ 9, 217 P.3d 265 (quotation simplified).

¶16 The statutory provision at issue here requires an injured worker to prove that he or she "sustained a significant impairment or combination of impairments as a result of the industrial accident or occupational disease that gives rise to the permanent total disability entitlement." Utah Code Ann. § 34A-2-413(1)(b)(i). Pilling contends—and the Commission concluded—that this provision requires him to demonstrate only that he suffered a "significant impairment . . . as a result of" the Work Accident. UAE agrees that Pilling must demonstrate this, but argues that the provision contains an additional requirement: that Pilling also prove that his impairment "g[ave] rise to the permanent total disability entitlement." That is, UAE asserts that subsection (i) requires Pilling not only to demonstrate a causal link between the Work Accident and some "significant impairment," but also between the impairment and the permanent total disability. We find UAE's interpretive arguments unpersuasive, for two reasons.

¶17 First, the grammatical structure of subsection (i) supports Pilling's interpretation. A grammatical analysis involves, among other things, tracing each modifying phrase to "its nearest reasonable referent." *Bryner*, 2018 UT 52, ¶ 14. Indeed, "a prepositive or postpositive modifier normally applies only to the nearest reasonable referent." *Id.* (quotation simplified). In the statute at issue, the phrase "that gives rise" is a modifying phrase, and the nearest reasonable referent, or antecedent, is "the industrial accident," not "a significant impairment." *See* Utah Code Ann. § 34A-2-413(1)(b)(i). Grammatically, then, the thing that must "give[] rise to the permanent total disability entitlement" is the "industrial accident or occupational disease" that forms the basis for the injured worker's claim. *See id.* Stated

another way, the phrase "that gives rise to the permanent total disability entitlement" modifies "industrial accident," and helps specify which accident—in industrial cases, there is sometimes more than one—forms the basis for the claim. Thus, we agree with the Commission that the grammatical structure of the provision indicates that the legislature intended for subsection (i) to require only that the worker prove that he or she has suffered a "significant impairment . . . as a result of" the specific accident—among many potential accidents—that forms the basis for the worker's claim for permanent total disability benefits. *See Fogleman v. Labor Comm'n*, 2015 UT App 294, ¶ 20, 364 P.3d 756 (explaining that subsection (i) allows consideration only of impairments that are "causally related to the Work Accident").[3]

---

3. We acknowledge the statement in *Fogleman* that subsection (i) "requires [an injured worker] to show that [the] impairment . . . was sustained 'as a result of' the Work Accident and that *it* 'gives rise to the permanent total disability.'" *See Fogleman*, 2015 UT App 294, ¶ 20 (emphasis added) (quoting Utah Code Ann. § 34A-2-413(1)(b)(i)). In a sense, this sentence from *Fogleman* presents the same grammatical conundrum that the statute itself does: it is unclear whether the antecedent to the word "it" in the sentence is the "impairment" or the "Work Accident." But even if this sentence from *Fogleman* could be construed as an endorsement of UAE's position, that statement would be dicta because the *Fogleman* court was not asked to resolve the same statutory interpretation question presented to us here. The question in *Fogleman* was whether, in assessing the significance of an employee's impairments, the impairments must be causally related to the Work Accident. *Id.* ¶ 18. The *Fogleman* court was not asked to weigh in on what the antecedent is to the phrase "that gives rise." *See id.* And the court ultimately concluded that the Commission "did not err by reading the statute as requiring it to disregard impairments it found to not

(continued…)

¶18    Second, the structure of the entire permanent total disability statute also supports this interpretation. One of the other six elements needed to establish permanent total disability—one we discuss more fully below, *see infra* Part II— already contains a requirement that the worker prove a causal link between the industrial accident and the claimed permanent total disability. *See* Utah Code Ann. § 34A-2-413(1)(b)(iii) (requiring proof that "the industrial accident . . . is the direct cause of the employee's permanent total disability"); *see also Provo City v. Utah Labor Comm'n*, 2015 UT 32, ¶¶ 20–22, 35–36, 345 P.3d 1242 (noting that this element is the statute's causation element, and requires claimants to prove both medical and legal causation). If we were to adopt UAE's interpretation, that would mean that the statutory scheme would contain two separate elements that each require proof of a causal link between the accident and any permanent total disability, and that those two elements would contain different governing language (one requiring proof that the impairment caused by the accident "gives rise" to the disability, and the other requiring proof that the accident was the "direct cause" of the disability). As noted above, we must construe statutes "so that no part or provision will be inoperative or superfluous, void or insignificant, and so that one section will not destroy another." *Jeffries*, 2009 UT 57, ¶ 9 (quotation simplified). UAE's interpretation would pit two subsections of the same statute against each other, and would create confusion about what a worker must prove in order to show the necessary causal link. The better interpretation, in the context of the overall statutory scheme, is that the statute contains but one provision setting forth the requirements for proving the causal link between the industrial accident and the

---

(…continued)
be causally related to the Work Accident," *id.*, a holding that is in complete harmony with ours today.

claimed permanent total disability, and that requirement is found in subsection (iii), not subsection (i).

¶19   In sum, when we read subsection (i) "in light of its linguistic, structural, and statutory context," *see Oliver*, 2017 UT 39, ¶ 20 (quotation simplified), its meaning is clear: this element requires an injured worker to prove that he or she suffered a "significant impairment or combination of impairments as a result of" the specific accident (or disease) "that gives rise to" the claim for permanent total disability benefits. That element—as distinguished from the element in subsection (iii)—does not require the worker to demonstrate a causal link between the impairment and the permanent total disability. The Commission did not err in its interpretation of subsection (i).

B

¶20   Applying this interpretation of subsection (i) to the facts of the case, the Commission determined that Pilling had suffered a significant impairment as a result of the Work Accident. That determination was supported by substantial evidence.

¶21   "The question of whether a particular impairment is 'significant' . . . requires a court to evaluate the severity of the impairment and determine whether the level of impairment exceeds a minimum threshold." *Provo City*, 2015 UT 32, ¶ 16. An "impairment" is statutorily defined as "a purely medical condition reflecting [a] . . . functional . . . loss." Utah Code Ann. § 34A-2-102(1)(i)   (LexisNexis   2018).[4]   Physical   impairment

_____

4. In this opinion, we analyze the relevant statutes as they were codified in 2007, at the time of the Work Accident. *See supra* ¶ 13; *see also O'Connor v. Labor Comm'n*, 2020 UT App 49, ¶ 17, 463 P.3d 85 (stating that "[t]he law as it existed at the time of [the worker's] injury . . . governs the amount of benefits to which he is entitled"). Here, however, we cite to the current version for

(continued…)

ratings, which assess the percentage of functional loss sustained by the industrial accident, may inform this determination. *See, e.g.*, *Provo City*, 2015 UT 32, ¶ 24. However, Utah courts have declined to define "significant impairment" in terms of an exact impairment-rating percentage, instead choosing to evaluate the severity of the impairment "in terms of the specific individual who has suffered a work-related injury." *See Fogleman*, 2015 UT App 294, ¶ 27 (quotation simplified). We will defer to the Commission's "significant impairment" determination if there is "substantial evidence" to support it. *See id.* ¶¶ 25, 29–30; *see also Provo City*, 2015 UT 32, ¶¶ 17–18.

¶22　With regard to the significance of Pilling's industrial injuries, UAE acknowledges that the medical panel assigned Pilling a 16% whole-person impairment rating stemming from the Work Accident, and that the Commission credited the panel's determination on that point. Nevertheless, UAE takes the position that Pilling's Work Accident impairment rating does not qualify as "significant" because it does not accurately indicate the degree to which the Work Accident impairments specifically decreased Pilling's ability to work. According to UAE, the Commission, by adopting the panel's rating, improperly combined all of Pilling's medical conditions in assessing the significance of his impairment, and asserts that, when examined on their own and apart from his non-industrial hip and lower back limitations, Pilling's limitations due to the Work Accident are insignificant. We find this argument unpersuasive.

---

(…continued)

convenience, because although the substance of the statutory definition of "impairment" has not materially changed since 2007, that definition is now codified in a different statutory subsection. *Compare* Utah Code Ann. § 34A-2-102(8) (LexisNexis 2007) *with* Utah Code Ann. § 34A-2-102(1)(i) (LexisNexis 2018).

¶23  As noted above, the Commission already determined, in previous proceedings and based on the parties' stipulation, that the Work Accident necessitated spinal surgery and led to at least temporary total and permanent partial disability. In the context of these current proceedings, evidence was presented to the Commission that, solely as a result of the Work Accident, Pilling can no longer do overhead work or reach above shoulder height. Evidence was also presented to the Commission that the Work Accident at least partially contributes—along with Pilling's preexisting issues—to another ten current and ongoing work restrictions. In addition, the medical panel concluded that the Work Accident caused Pilling to sustain a 16% whole-person impairment rating. And while UAE certainly presented conflicting evidence that indicated the possibility that Pilling could resume work activities with few limitations, the Commission found the contrary evidence—in particular the report from the medical panel—to be persuasive.

¶24  Under these circumstances, "substantial evidence" supported the Commission's decision. *See Fogleman*, 2015 UT App 294, ¶¶ 25, 29–30. Indeed, our supreme court, in a similar case, determined that the Commission's "significant impairment" conclusion was supported by substantial evidence when the industrial accident resulted in a 6% whole-person impairment rating and prevented the worker "from lifting, pushing, or pulling more than 25 pounds or working at heights." *See Provo City*, 2015 UT 32, ¶¶ 23–24 (quotation simplified). In our view, the injuries and limitations Pilling sustained as a result of the Work Accident are at least as significant as those sustained by the worker in *Provo City*.[5] Accordingly, it follows that the

---

5. UAE asserts that only the 13% cervical spine impairment should be considered in the "significant impairment" finding because "[t]here is no medical opinion to support that the 3% TMJ impairment prohibits Mr. Pilling from performing basic

(continued…)

Commission's determination in this case—that Pilling sustained a significant impairment as a result of the Work Accident—was supported by substantial evidence.

## II

¶25    We now turn to UAE's contention that the Commission erred in concluding that Pilling's Work Accident was the "direct cause" of his permanent total disability. UAE argues that the Commission misinterpreted the statutory requirements for demonstrating medical causation when the claimant has contributing non-industrial preexisting conditions. UAE then argues that the Commission applied this incorrect interpretation in determining that Pilling's preexisting conditions did not sever the direct causal connection between the Work Accident impairments and Pilling's permanent total disability. We first analyze the Commission's interpretation of the "direct cause" subsection, and conclude that the Commission correctly interpreted the section. We then discuss the Commission's application of the law to the facts, and conclude that the Commission's medical causation determination was supported by substantial evidence.

## A

¶26    To qualify for permanent total disability benefits, an employee must prove that a work accident "was the direct cause of the employee's permanent total disability." Utah Code Ann. § 34A-2-413(1)(b)(iii). Our supreme court has interpreted this

_____

(…continued)
work activities, gainful employment, prior employment, or other work reasonably available." But even if we were to exclude the 3% TMJ impairment from the analysis, we would still conclude that the Commission's significant impairment determination was supported by substantial evidence.

"direct cause" requirement as potentially encompassing both legal and medical causation, *Provo City*, 2015 UT 32, ¶¶ 20–21, but only medical causation is at issue in this case. When an employee has a preexisting condition, medical causation "depends on whether [that] condition actually caused or aggravated the specific injury or disability for which compensation is sought." *Hutchings v. Labor Comm'n*, 2016 UT App 160, ¶ 20, 378 P.3d 1273. If a preexisting condition is the "sole medical cause" of the injury or disability, then medical causation is not present. *See id.* ¶ 21.

¶27    In raising its medical causation challenge, UAE asserts that the Commission applied the wrong standard for determining medical causation. But in its briefing, UAE fails to clearly articulate the medical causation standard it is advocating for, and instead uses a variety of terms to describe that standard. At different points in its briefing, UAE variously asserts that medical causation is not established unless the Work Accident is the "sole," "greater," "primary," "independent," "[]lone," or "only" cause of Pilling's disabilities. In essence, UAE contends that, where preexisting or nonindustrial conditions are present, medical causation exists only where the employee establishes that the workplace injury is the sole or dominant cause of the disability. UAE therefore asserts that the Commission erred by concluding that the requisite medical causal link can exist in a situation where both a work accident and preexisting conditions directly "contribute to" an employee's disability.

¶28    But our supreme court has clearly stated that medical causation under subsection (iii) is present when an employee demonstrates that a work accident is "the but-for cause of the disability." *Provo City*, 2015 UT 32, ¶ 20. Thus, UAE has it exactly backward: medical causation exists "so long as the employee's condition is not solely the result of a pre-existing condition." *Cox v. Labor Comm'n*, 2017 UT App 175, ¶ 18, 405 P.3d 863 (quotation simplified); *accord Hutchings*, 2016 UT App 160, ¶¶ 18, 21.

Indeed, we have previously stated that "proving that the industrial accident is *a* cause—as opposed to *the* cause—of the condition requiring treatment satisfies the medical causation standard."[6] *Cox*, 2017 UT App 175, ¶ 18; *see also id.* ¶ 21 ("The question is not whether the accident contributed substantially to [the worker's] medical condition, but whether it contributed in any degree." (quotation simplified)). UAE's argument is therefore directly foreclosed by our supreme court's causation discussion in *Provo City*.

¶29 Accordingly, the Commission correctly interpreted the "direct cause" statutory subsection, as concerns medical causation. It stated: "The fact that Mr. Pilling's non-industrial conditions also contribute to many of his limitations does not defeat the direct causal connection between the [W]ork

---

6. In *Cox*, the causation question we were asked to consider arose under section 34A-2-401(1) of the Utah Code, a provision that authorizes workers' compensation benefits to be paid to employees who are "injured . . . by accident arising out of and in the course of the employee's employment." *See Cox v. Labor Comm'n*, 2017 UT App 175, ¶ 14, 405 P.3d 863 (quoting Utah Code Ann. § 34A-2-401). But our supreme court has made clear that the "direct cause" examination required by section 34A-2-413(1)(b)(iii)—the provision we are asked to analyze in this case—involves the same two causation components as the section 401 causation examination, *see Provo City v. Utah Labor Comm'n*, 2015 UT 32, ¶¶ 20–21, 345 P.3d 1242 (identifying both medical causation and legal causation as potentially applicable in section 413 cases, at least "where a preexisting condition is a contributing factor to the disability"), and has defined medical causation in section 413 cases by referring to cases arising under section 401, *see id.* ¶ 20 (citing *Allen v. Industrial Comm'n*, 729 P.2d 15, 27 (Utah 1986), and *Murray v. Utah Labor Comm'n*, 2013 UT 38, ¶ 45, 308 P.3d 461).

[A]ccident and his permanent total disability. . . . Mr. Pilling's industrial condition plays a direct role in the overwhelming majority of his limitations even if his non-industrial conditions also play a concurrent role." From a legal standpoint, this statement is entirely correct—the Commission determined that medical causation can be met where an employee's workplace injuries contributed to the disability "at least in part." That is all the law requires. *See, e.g.*, *Cox*, 2017 UT App 175, ¶ 18.

B

¶30 Finally, we must assess whether the Commission correctly applied the "direct cause" element in subsection (iii) to the facts of this case. The Commission determined, based upon the evidence presented, that Pilling's permanent total disability was directly caused by the Work Accident. Because such a determination requires evaluating complex medical records and data, we defer to the Commission's medical causation determinations, and set them aside only where they are "not supported by substantial evidence." *See Hutchings*, 2016 UT App 160, ¶ 23 (quotation simplified) (also stating that "[m]edical causation is fundamentally a factual determination" that is reviewed under the substantial evidence standard). "A medical panel's report alone may provide substantial evidence to support the Labor Commission's determination of medical causation." *Benson v. Utah Labor Comm'n*, 2018 UT App 228, ¶ 8, 437 P.3d 1253 (per curiam). Merely pointing to conflicting facts and evidence is insufficient to undermine substantial evidence supporting the finding. *See id.* ¶ 7.

¶31 In this case, substantial evidence supported the Commission's determination that the Work Accident medically caused Pilling's disabilities. In making this determination, the Commission relied on the medical panel's report opining that, even ten years after the Work Accident, Pilling "continues to have moderate pain . . . and limited activity involving his neck,

left TMJ/facial area and left arm that restrict his capacity to work as a heavy equipment mechanic or with physical labor involving his neck and left upper extremities." The Commission was not persuaded by the contrary medical opinions UAE presented, which indicated that Pilling's industrial injuries were sufficiently healed and he was cleared for "all activities," and it instead determined that such evidence contradicted the medical panel's "thorough . . . and well-reasoned analysis of Mr. Pilling's various injuries and conditions." The medical panel's conclusion reflects a comprehensive review of Pilling's medical history, a physical exam and interview of Pilling by the panel members, and a detailed analysis of Pilling's current workplace limitations. On review, we conclude that the panel's report constitutes substantial evidence sufficient to support the Commission's medical causation finding.

CONCLUSION

¶32 The Commission correctly interpreted the relevant statutory provisions regarding an employee's entitlement to permanent total disability, and its fact-based determinations are supported by substantial evidence. Accordingly, we decline to disturb the Commission's award of permanent total disability benefits to Pilling.

───────