**2021 UT App 108**

## THE UTAH COURT OF APPEALS

C.R. ENGLAND AND
INDEMNITY INSURANCE CO. OF NORTH AMERICA,
Petitioners,
*v.*
LABOR COMMISSION AND MANSOOR HAKEM,
Respondents.

Opinion
No. 20200181-CA
Filed October 15, 2021

Original Proceeding in this Court

Christin Bechmann and Jeffrey A. Callister,
Attorneys for Petitioners

Ryan J. Schriever and W. Andrew Penrod, Attorneys
for Respondent Mansoor Hakem

JUDGE GREGORY K. ORME authored this Opinion, in which
JUDGES RYAN M. HARRIS and RYAN D. TENNEY concurred.

ORME, Judge:

¶1     C.R. England and its insurer, Indemnity Insurance Co. of North America, petition for judicial review of the Utah Labor Commission's order directing it to pay temporary total disability (TTD) benefits to Mansoor Hakem. Hakem filed what he styled a "cross-appeal" seeking further TTD benefits. We decline to address Hakem's purported cross-appeal because our rules of appellate procedure and the relevant statutory provisions do not allow for cross-petitions in proceedings for judicial review of agency action. We therefore lack jurisdiction to consider Hakem's "cross-appeal," which was filed more than 30 days following entry of the final order. On the merits of England's petition, we set aside the Commission's order directing England to pay TTD benefits because the order was not supported by

substantial evidence and instruct the Commission to reconsider its order consistent with the guidance in this opinion.

BACKGROUND[1]

¶2    On June 9, 2015, Hakem was injured while working for England.[2] Hakem then filed a claim with England for TTD benefits.[3] It is not clear in the record, however, when England began paying these benefits. On October 2, 2015, England made an offer of light-duty work to Hakem, which Hakem rejected on October 14, 2015. Despite this rejection, England claims to have continued paying TTD benefits totaling $54,510 to Hakem. At some point in 2016, it appears that England discontinued making TTD benefit payments. Again, the timing of this discontinuation is not entirely clear in the record, and this is the focus of England's petition for review.

---

1. "In reviewing an order from the Commission, we view the facts in the light most favorable to the Commission's findings and recite them accordingly." *O'Connor v. Labor Comm'n*, 2020 UT App 49, n.1, 463 P.3d 85.

2. Because the crux of England's petition for review concerns the timing and amount of the TTD benefit payments, and because we ultimately do not address the issues Hakem raises, we have no need to recite all the facts regarding Hakem's injury and treatment or the findings made by the medical panel, the administrative law judge, and the Commission regarding that injury.

3. England also paid over $30,000 toward Hakem's medical bills, but because England does not raise any issue with these expenses, we do not mention them further.

¶3     In December 2016, Hakem filed a claim with the Commission seeking TTD benefits from June 10, 2015, until the date on which he achieved maximum medical improvement. In its answer to Hakem's claim, England asserted that it had already paid Hakem $54,510 in TTD benefits, but it failed to include any dates for those payments. In September 2018, the matter proceeded to a hearing before an administrative law judge (the ALJ). During the hearing, England orally affirmed that it made TTD benefit payments to Hakem. First, it asserted that it paid TTD benefits to Hakem "until he was released at maximum medical improvement," and later it argued that "[Hakem] is requesting TTD benefits from June 10, 2015, through the present," even though England "paid . . . these benefits through October." These are the only two references England made during the hearing to its prior payments of TTD benefits, and England did not provide, as far as we can tell from the record, any evidentiary support for these assertions or even specific dates of payment. All England asserted was that it paid benefits through "October," without specifying a year. To confuse matters more, at the end of the hearing Hakem informed the ALJ that he was now claiming TTD benefits "from October 14, 2015, to a date of medical stability." This time period included many months during which England claimed to have already paid TTD benefits.

¶4     The ALJ then referred the case to a medical panel and subsequently denied further TTD benefits to Hakem. In his order, however, the ALJ seems to have confused the dates in question. The ALJ began the order by first stating, with our emphasis, that "[t]he panel's opinion will assist the Court in determining the relevant question of whether [Hakem] retained the ability to perform any work after October 2, *2016*." The ALJ continued, again with our emphasis, that

> [b]ased on the different opinions, the Court referred this issue to a medical panel in order to

assist the Court in determining whether [Hakem] could return to light-duty work or if he was restricted from all work at any point after October 2, *2015*.

The medical panel determined [Hakem] did not have a biomechanical impairment in function, but he was limited in his ability to function due to his pain and required light duty [restrictions] after October 2, *2015*. . . . Therefore, because light-duty work was made available to [Hakem] and he failed to accept the work, he is not entitled to total disability compensation after October 13, *2014*.

¶5 Hakem sought review of the ALJ's order by the Commission. The Commission affirmed the ALJ's order but amended it, sua sponte, in an attempt to fix the ALJ's apparent confusion about the operative dates. It stated that the ALJ's

decision to deny Mr. Hakem [TTD benefits] seems to be based on CR England's proffer of light-duty work on October 2, 2015, and his effective refusal of such assignment. [The ALJ] then sought to ensure Mr. Hakem's ability to perform light-duty work as of that date by posing such question to the medical panel, but erroneously describing the date as 2016 rather than 2015. Despite this error, [the ALJ] relied on the panel's opinion that Mr. Hakem could work light duty as evidence that the proffer of such work from CR England was appropriate.

The parties have not attempted to bring these errors to light on review. Instead their present dispute focuses on the medical panel's conclusions.

The Commission further explained:

> After considering the evidence on this point, the Commission agrees with [the ALJ] that Mr. Hakem has not established entitlement to [TTD] benefits beginning October 14, 2015, as CR England had made a proffer of light-duty work to him by that date. However, Mr. Hakem is entitled to [TTD] benefits for certain periods during which he was not able to perform even light-duty work.

¶6 The Commission concluded, after reviewing Hakem's medical records, that Hakem was released from all work by his doctor on February 3, 2016, and then released only for light-duty work on June 15, 2016. The Commission thus ordered England to pay Hakem $14,899.40 in TTD benefits for that February-to-June time period. England then filed a request for the Commission to reconsider its order, arguing that its decision to award TTD benefits to Hakem from February 3, 2016, to June 14, 2016, was "not supported by sufficient evidence" and "erroneously sets aside [the] findings of . . . [the ALJ] based on a typographical error." On January 29, 2020, the Commission denied the motion, stating that substantial evidence existed from Hakem's medical records to show that Hakem was released from all work from February 3, 2016, to June 14, 2016, and should receive benefits for that time period.

¶7 On February 26, 2020, within 30 days of the Commission's final order, England filed a petition for review in this court. Hakem then purported to file a "cross-appeal" on March 5, 2020, asserting error with the ALJ's and the Commission's decisions regarding the offer for light-duty work and the denial of further benefits on that basis.

## ISSUES AND STANDARDS OF REVIEW

¶8 Hakem raises multiple issues in his cross-petition. But we must first determine whether we have jurisdiction to consider

the petition. "Questions about appellate jurisdiction are questions of law." *See Zion Village Resort LLC v. Pro Curb U.S.A. LLC*, 2020 UT App 167, ¶ 21, 480 P.3d 1055 (quotation simplified). And because we determine that we lack jurisdiction to consider it, we are required to dismiss Hakem's petition. *See id.*

¶9     England asserts that the Commission erred in granting TTD benefits to Hakem for the period of February 3, 2016, to June 14, 2016, because England had already paid those benefits to Hakem, resulting in Hakem receiving a double benefit. Because this is a factual issue, we review the Commission's order for substantial evidence. *Utah Am. Energy Inc. v. Labor Comm'n*, 2021 UT App 33, ¶ 12, 484 P.3d 1195. "A decision is supported by substantial evidence if there is a quantum and quality of relevant evidence that is adequate to convince a reasonable mind to support a conclusion." *Ivory Homes, Ltd. v. Utah State Tax Comm'n*, 2011 UT 54, ¶ 11, 266 P.3d 751 (quotation simplified).

ANALYSIS

I. Jurisdiction Over Hakem's Cross-Appeal

¶10    The Utah Administrative Procedures Act (UAPA) governs judicial review of state agency action. *See* Utah Code Ann. §§ 63G-4-101 to -601 (LexisNexis 2018). UAPA states that "[a] party shall file a petition for judicial review of final agency action within 30 days after the date that the order constituting the final agency action is issued[.]" *Id.* § 63G-4-401(3)(a). And "[t]o seek judicial review of final agency action resulting from formal adjudicative proceedings, the petitioner shall file a petition for review of agency action with the appropriate appellate court in the form required by the appellate rules of the appropriate appellate court." *Id.* § 63G-4-403(2)(a). Rule 14 of the Utah Rules of Appellate Procedure, in turn, states that "[w]hen a statute provides for judicial review by or appeal to the Supreme

Court or the Court of Appeals of an order or decision of an administrative agency, . . . a party seeking review must file a petition for review . . . within the time prescribed by statute[.]" Utah R. App. P. 14(a). Rule 18 further directs that "[a]ll provisions" of the rules of appellate procedure "are applicable to review of decisions or orders of agencies, except that Rules 3 through 8 are not applicable." *Id.* R. 18. Thus, rule 4, which allows parties to cross-appeal in appeals arising from judicial proceedings, does not apply to proceedings for review of agency decisions. *See id.* R. 4(d); *Watson v. Labor Comm'n*, 2020 UT App 170, ¶ 1 n.1, 480 P.3d 353 (noting that "because the rules of appellate procedure do not allow for a cross-petition in the administrative context, akin to a cross-appeal in a judicial proceeding, each party must file its own petition for review if they both wish to contest the administrative agency's ruling"). We note that UAPA likewise does not contain a provision allowing cross-petitions. Instead, it directs that parties shall file petitions for review within 30 days of an agency's final order. *See* Utah Code Ann. § 63G-4-401(3)(a).

¶11   Thus, parties wishing to challenge any part of an agency decision governed by UAPA must file their own petition for review within 30 days of the agency's final order. *See id.*; Utah R. App. P. 14(a). And "[w]e cannot infer a right to file a cross-petition within an additional period of time where the Utah Legislature did not include such a provision in UAPA," *Viktron/Lika Utah v. Labor Comm'n*, 2001 UT App 8, ¶ 7, 18 P.3d 519, particularly given that our rules expressly exclude the availability of that procedural tool, *see* Utah R. App. P. 18.

¶12   In this case, the Commission's order became final on January 29, 2020, when it denied England's motion for reconsideration. Both parties then had 30 days to file a petition for review with this court. England timely filed its petition for review on February 26. Hakem, on the other hand, did not file a petition for review within that 30-day window. Rather, he filed a

"cross-appeal" on March 5. And, as noted above, our caselaw, the applicable rules, and UAPA clearly indicate that cross-appeals or cross-petitions are not available when we review agency action.[4] *See Watson*, 2020 UT App 170, ¶ 1 n.1; *Viktron/Lika Utah*, 2001 UT App 8, ¶ 7. Therefore, we lack jurisdiction to consider Hakem's cross-petition. And even if we were to construe it as a petition for review under the statute, *see Viktron/Lika Utah*, 2001 UT App 8, ¶ 8 ("We may construe a filing with this court according to its content, regardless of its caption."), we would nonetheless lack jurisdiction to consider the issues raised because it was filed outside the 30-day deadline.[5] Therefore, we are required to dismiss Hakem's cross-

---

4. We acknowledge this court's role in Hakem's confusion on his ability to file a "cross-appeal," as we accepted his briefs and even charged and collected a cross-appeal filing fee. We permitted the "cross-appeal" to move along until it was placed with a panel for resolution on its merits. We regret our failure to detect the problem sooner, and we should have dismissed the "cross-appeal" before the parties spent time and resources in briefing it. But ultimately, mistakes on a court's part cannot overcome a lack of jurisdiction. *See In re adoption of Baby E.Z.*, 2011 UT 38, ¶ 25, 266 P.3d 702 ("Because subject matter jurisdiction goes to the heart of a court's authority to hear a case, it is not subject to waiver and may be raised at any time[.]") (internal citations omitted). We will direct our clerk of court to refund the cross-appeal filing fee charged to Hakem because it was improvidently collected.

5. At oral argument before this court, Hakem asserted that because UAPA grants us "jurisdiction to review *all* final agency action resulting from formal adjudicative proceedings," *see* Utah Code Ann. § 63G-4-403(1) (LexisNexis 2018) (emphasis added), and because England filed a petition for review within 30 days, we have jurisdiction over the issues Hakem raises because they

(continued…)

petition.[6] *See Barney v. Division of Occupational & Pro. Licensing*, 828 P.2d 542, 544 (Utah Ct. App. 1992) ("If the court concludes

_____

(…continued)

were dealt with in the Commission's order. This is an expansive view of jurisdiction that we cannot adopt. In essence, Hakem is asserting that once a party files a petition for review of an agency action, the opposing party has unlimited time to raise issues of its own because that first petition vested the court with plenary jurisdiction over all aspects of the agency's ruling. This does not comport with UAPA, which requires parties to file their petitions for review within 30 days, *see id.* § 63G-4-401(3)(a), and we see nothing in the statute, applicable rules, or caselaw that would allow for this expansive approach to our jurisdiction.

6. We do, however, renew our concern with the current statutory and rule-based scheme in place for judicial review of agency action. We see wisdom in a rule, akin to what exists in an appeal from a judicial proceeding, that allows for cross-petitions in proceedings for judicial review of agency action. Not only would this increase judicial efficiency, as we recently explained in *Watson v. Labor Commission*, 2020 UT App 170, ¶ 1 n.1, 480 P.3d 353, it would also undoubtedly benefit the parties in these situations. For example, after an order has been issued by an agency, one side may not be completely satisfied with the order but may be satisfied enough that it does not believe it worth the trouble to file a petition for review and pursue further proceedings just to fine tune the decision substantially in its favor. But if the opposing party files a petition for review and the substantially prevailing party is to find itself before the appellate court anyway, that party should have the opportunity to raise issues in a cross-petition. This is the very logic that permits cross-appeals in the context of judicial proceedings, and we can think of no reason why that procedure would not work as well in the administrative review context. We therefore

(continued…)

that it does not have jurisdiction, it retains only the authority to dismiss the action.") (quotation simplified).

¶13 At oral argument before this court, Hakem, citing *Hamer v. Neighborhood Housing Services of Chicago*, 138 S. Ct. 13 (2017), argued that our procedural rules that explicitly do not allow for cross-petitions cannot dictate jurisdiction in our review of agency proceedings. *See* Utah R. App. P. 4, 14, 18. Even aside from the fact that UAPA itself requires parties to file a petition within 30 days and does not provide a party with the possibility of a cross-petition, this argument is unavailing for two additional reasons.

¶14 First, UAPA directs that parties petitioning for review must file a petition "with the appropriate appellate court in the form *required by the appellate rules* of the appropriate appellate court." Utah Code Ann. § 63G-4-403(2)(a) (emphasis added). Thus, the statute that grants this court jurisdiction over these reviews also grants the Supreme Court the ability to control that jurisdiction through its rules. *Hamer* clearly does not apply as it dealt with jurisdiction in the federal context, *see* 138 S. Ct. at 17 ("Only Congress may determine a lower *federal court's* subject-matter jurisdiction.") (emphasis added) (quotation otherwise simplified), and not in a state context where the state legislature grants a court the authority to manage jurisdiction through its own rules.

---

(…continued)
believe our Supreme Court should direct its Advisory Committee on the Rules of Appellate Procedure to consider amendments to the applicable rules that would enable parties in administrative proceedings to file cross-petitions. And to the extent that statutory changes are needed to effect such a change, appropriate statutory amendments should also be considered by our Legislature.

¶15    Second, our Supreme Court has held that the applicable Utah Rules of Appellate Procedure have "jurisdictional effect." *State v. Lara*, 2005 UT 70, ¶ 12, 124 P.3d 243 (quotation simplified). Specifically, deadlines for filing notices of appeal are "jurisdictional in nature." *State v. Collins*, 2014 UT 61, ¶ 22, 342 P.3d 789 (quotation simplified). The same is true for petitions for judicial review, and courts are "depriv[ed] . . . of jurisdiction" when petitions for review are untimely filed. *Union Pacific R.R. Co. v. Utah State Tax Comm'n*, 2000 UT 40, ¶ 25, 999 P.2d 17. *See also Ortega v. Ridgewood Estates LLC*, 2016 UT App 131, ¶ 30, 379 P.3d 18 ("We are bound by vertical stare decisis to follow strictly the decisions rendered by the Utah Supreme Court.") (quotation simplified).

¶16    For these reasons, we dismiss Hakem's cross-appeal for lack of jurisdiction.

## II. TTD Benefits

¶17    England's main argument[7] asserted in its timely petition for review is that the Commission erred, not because it

---

7. England raises two additional issues. First, it asserts that the Commission's order was arbitrary and capricious because the Commission "raised the typographical error without involving the parties or taking the time to verify whether the period was even in dispute." Because we instruct the Commission to reconsider its decision on the basis that its order was not supported by substantial evidence, giving it the opportunity to remedy any error, we have no need to address this ancillary issue.

Second, England asserts its due process rights were violated when the Commission corrected the ALJ's order sua sponte. We briefly address this issue because it may arise again if the Commission finds that England did not make the payments it

(continued…)

determined that Hakem was entitled to TTD benefits, but because it awarded a double benefit to Hakem by requiring England to pay a second round of TTD benefits for the period from February 3, 2016, to June 14, 2016. There clearly was confusion on the part of the ALJ, and possibly on the part of the Commission, concerning the dates relevant to Hakem's entitlement to benefits. We will not directly wade into that debate because England has asserted on review that "[i]n the end . . . the dates do not matter because it does not change the outcome of the case, specifically, [England] had already paid sixty-nine weeks of TTD."

¶18    In the proceedings before the Commission, however, there was scant evidence of these payments. England directs us to only two locations in the record, and we are unaware of any

---

(…continued)

claims to have made and reinstates its original order. *See State v. Low*, 2008 UT 58, ¶ 61, 192 P.3d 867 (stating that when "there are other issues presented on appeal that will likely arise" on remand, we may "exercise our discretion to address those issues for purposes of providing guidance on remand").

We disagree with England that the Commission erred in fixing a typographical error sua sponte. Pursuant to Utah Code section 34A-2-420(1), the Commission is granted "continuing" jurisdiction over each case before it and "may from time to time modify or change a former finding or order of the commission." Furthermore, our Supreme Court has held that "the power of the Commission as to its continuing jurisdiction . . . is extended to the right to rescind, alter, or amend orders, decisions, or awards on good cause appearing therefor." *Frito-Lay v. Utah Labor Comm'n*, 2009 UT 71, ¶ 25, 222 P.3d 55 (quotation simplified). Thus, the Commission has the prerogative to adjust awards and correct mistakes, and it did not violate England's due process rights in attempting to correct the mistakes it saw here.

others, where it provided "evidence" of these payments. It first cites its answer to Hakem's claim for benefits in which it simply asserted that it had already paid $54,510 in TTD benefits to Hakem from the date of the injury. Second, it cites its assertions in the hearing before the ALJ when it claimed that it paid TTD benefits to Hakem "until he was released at maximum medical improvement" and that "[Hakem] is requesting TTD benefits from June 10, 2015, through the present," even though it "paid . . . these benefits through October." England did not submit any documents substantiating these assertions, and neither the ALJ nor the Commission made any findings premised on England's assertions.

¶19  On review, England claims that it "submitted the undisputed summary of benefits paid showing [it] had paid Hakem $54,510 in [TTD benefits]." But then to back up this claim, England cites its answer to Hakem's claim and nothing else, let alone a location in the record where we might find the "summary of benefits" it allegedly paid. Nor is such a summary attached as an exhibit to its answer. England then contends that we can derive the dates of the payments through simple math. Hakem was entitled to $790 per week in TTD benefits. By taking the $54,510 England asserts it paid and dividing it by $790, Hakem received sixty-nine weeks of payments. And sixty-nine weeks from June 9, 2015, ends on October 4, 2016. Thus, England claims that it clearly made payments to Hakem during the period of February 3, 2016, to June 14, 2016, and that the Commission ordered it to pay duplicative TTD benefits to Hakem for that period.

¶20  While the math appears to be correct, on review we are unable to directly grant the relief England seeks because of the evidentiary gaps in the record regarding these payments. First, there is no evidence of when England actually began making payments to Hakem; it could have been the exact day of Hakem's injury, as England claims, but we cannot determine

that and have no way of knowing on which dates England actually made payments. Second, and most importantly, there simply is nothing in the record to substantiate England's specific claim that it paid a total of $54,510 in TTD benefits. There are no documents in the record detailing what Hakem received and when. England is essentially asking us to make a finding, without any substantive record evidence, that it made the payments during the disputed time period and then direct the Commission to rescind its order requiring England to make additional payments. This is something we typically will not do. *See Willey v. Willey*, 951 P.2d 226, 230 (Utah 1997) ("If the appellate court determines that the findings of fact are insufficient to support the conclusion, the appellate court normally remands the matter . . . for further proceedings.").

¶21 But we do recognize the basic merit of England's complaint and set aside the Commission's order because it is not, so far as we can ascertain, supported by substantial evidence. The Commission ordered England to pay approximately 18 weeks of TTD benefits, and there is some indication in the record that England had already made payments applicable to that time period. Thus, we set the Commission's order aside and instruct it to determine whether England had already made TTD payments from February 3, 2016, to June 14, 2016, as England claimed before the ALJ. The Commission is to ensure that no payments it required England to make were duplicative. If England did, in fact, already make these payments during that time period, then the Commission shall decline to award Hakem any further TTD benefits. If the Commission finds that England did not make those payments, or at least did not make all of them, then it can simply reinstate or adjust its original order, as appropriate.

CONCLUSION

¶22    Because UAPA and our rules of appellate procedure do not allow for cross-petitions in proceedings for judicial review of agency action, we do not have jurisdiction to consider Hakem's "cross-appeal," and we have no option other than to dismiss it. On the merits of England's petition, we set aside the Commission's order on the ground that it is not supported by substantial evidence and direct the Commission to determine whether England has already paid Hakem all TTD benefits to which he is entitled.

———————