2026 UT App 63

## THE UTAH COURT OF APPEALS

FUTURE COMMUNITY SERVICES INC., FCS COMMUNITY
MANAGEMENT, ARLINGTON PLACE HOMEOWNERS ASSOCIATION,
AND DEVIN LAWRENCE,
Petitioners,

*v.*

LABOR COMMISSION AND MATTHEW HINOJOS,
Respondents.

Opinion
No. 20250064-CA
Filed April 23, 2026

Original Proceeding in this Court

Lincoln W. Hobbs, Attorney for Petitioners

Freyja Johnson and Allison Herr, Attorneys for
Respondent Matthew Hinojos

JUDGE RYAN M. HARRIS authored this Opinion, in which
JUDGES DAVID N. MORTENSEN and RYAN D. TENNEY concurred.

HARRIS, Judge:

¶1 This attorney fees dispute comes before us for a second time. In our first decision, we set aside the Labor Commission's (the Commission) conclusion that it lacked authority to award attorney fees, and we remanded the matter to the Commission for it to consider the merits of an attorney fees request. On remand, the Commission determined that Respondent Matthew Hinojos was entitled to attorney fees and awarded him $27,513.28. Now, Petitioners Future Community Services Inc., FCS Community Management, Arlington Place Homeowners Association, and Devin Lawrence (collectively, the Association) challenge that fee award, claiming that the Commission failed to apply the correct legal standard and that, for various reasons, the award was too high in any event. We reject many of the Association's factual

arguments regarding the Commission's fee award. But we agree with the Association that the Commission did not conduct a complete reasonableness assessment of Hinojos's fees request, and we therefore set aside the Commission's award and send this case back to the Commission for a renewed assessment of the reasonableness of Hinojos's claimed attorney fees.

BACKGROUND[1]

¶2 Hinojos and another individual (Second Claimant) separately filed disability discrimination claims against the Association. Before the Commission, Hinojos and Second Claimant were represented by the same attorney, and their claims were consolidated. Eventually, the Commission found that the Association had failed to provide a reasonable accommodation for Hinojos but not for Second Claimant. Relative to Hinojos's case, the Commission imposed a $4,000 penalty on the Association, but it declined to consider Hinojos's request for attorney fees because it believed that it was precluded from making such awards by Utah Supreme Court caselaw—namely *Injured Workers Ass'n of Utah v. State*, 2016 UT 21, 374 P.3d 14. Hinojos appealed, claiming that the Commission was misreading *Injured Workers* and that it should have considered the merits of his attorney fees request. We agreed with Hinojos and sent the case back to the Commission with instructions for it to consider the merits of Hinojos's attorney fees request.

¶3 Our remand instructions were specific, and they required the Commission to assess Hinojos's fees request under the guidelines we had set forth in *Christensen v. Labor Commission* (*Christensen I*), 2023 UT App 100, 536 P.3d 1114, *rev'd in relevant*

---

1. "In reviewing an order from the Commission, we view the facts in the light most favorable to the Commission's findings and recite them accordingly." *Jensen Tech Services v. Labor Comm'n*, 2022 UT App 18, n.1, 506 P.3d 616 (cleaned up).

*part sub nom.*, *Christensen v. Salt Lake County* (*Christensen II*), 2025 UT 55, 582 P.3d 749. In *Christensen I*, we held that the Commission could make attorney fees awards, but that in doing so it could not "pass[] judgment on the reasonableness underlying those fees." 2023 UT App 100, ¶ 55. We stated in a footnote that the forbidden "reasonableness" inquiry included assessment of "the amount an attorney charges for a particular service," including any analysis of whether "the attorney's hourly rate was . . . consistent with rates charged by similarly situated lawyers." *Id.* ¶ 55 n.15. But we clarified that the Commission could still address allocation issues, including "concerns such as the relatedness of the charges" to the matters for which attorney fees were awarded. *Id.*

¶4 On remand, Hinojos submitted a request for $42,457.19 in attorney fees, plus additional fees that had not yet been determined for work performed by one attorney. The fees had been incurred by four sets of attorneys: (1) $27,566.80 incurred by attorney Robert Spjute for representing both Hinojos and Second Claimant in proceedings before the Commission, (2) $9,280.39 incurred by attorney Freyja Johnson for representing Hinojos on appeal, (3) $5,610 incurred by the Disability Law Center for representing Hinojos prior to the filing of the Commission proceeding, and (4) an undetermined additional amount for a fourth attorney. The Association opposed the motion, claiming that some of the fees were "unreasonable" and that Hinojos had, in any event, "failed to properly allocate the fees" between his successful claims and Second Claimant's unsuccessful claims. An administrative law judge (the ALJ), after reviewing Hinojos's motion, determined that more information was required and asked Hinojos to "provide supplemental information through declarations detailing [which] fees related to [which] services."

¶5 Hinojos complied, filing a renewed motion for attorney fees and this time asking for an award of $42,906.93. The new fee amounts were again allocated among four sets of attorneys: (1) $30,787.30 for Spjute for representing both Hinojos and Second

Claimant before the Commission, (2) $5,504.63 for Johnson for representing Hinojos on appeal, (3) $5,610 for the Disability Law Center for representing Hinojos prior to the filing of the Commission proceeding, and (4) $1,005 incurred by attorney Alan Bachman, who had represented both Hinojos and Second Claimant. These new amounts were accompanied by affidavits explaining why, in the opinions of the billing attorneys, the fees were allocable to Hinojos's claims. Notably, Johnson significantly lowered her fee request, and Bachman explained that he had divided his "time in half to take into account" the fact that he had represented both Hinojos and Second Claimant. Spjute and the Disability Law Center, however, did not lower their fee requests. Spjute asserted that further allocation was impossible because Hinojos's claims had been "intertwined" with Second Claimant's, and the Disability Law Center relied on its prior statement that its "calculations [were] based on a thorough review of billing entries . . . during the course of" its representation of Hinojos.

¶6 The Association objected, claiming that Hinojos had not provided sufficient evidence to support his request and that Hinojos had again failed to properly allocate his requested fees. The Association argued that "all fees . . . should be denied" because of Hinojos's "conscious disregard of court and Commission directives, and in the absence of evidence which can support an award." The Association also requested an evidentiary hearing at which it could "inquire into, analyze and challenge [the] requested fees."

¶7 After reviewing the submitted materials, and without holding a hearing, the ALJ awarded Hinojos $27,513.28 in attorney fees, which was significantly less than he had requested. With regard to Spjute's requested fees, the ALJ found that Hinojos and Spjute had "made a good-faith argument that further allocation [was] not possible due to the intertwined nature of the claims." Nevertheless, the ALJ did not agree that the claims actually were intertwined to the extent that allocation was

impossible. Despite noting that "[t]he absence of specific time records [made] it challenging to ascertain the exact amount of work performed exclusively for [Hinojos]," the ALJ—based on his experience and familiarity with the case—found it "reasonable to infer that an equal amount of attorney time" had been devoted to Hinojos's claim as to Second Claimant's claim. Based on this inference, the ALJ found it "reasonable that the workload would be close to an even split," and he awarded Hinojos only half of the fees incurred by Spjute, thus reducing Hinojos's fee request by more than $15,000.

¶8 With regard to the fees incurred by the other attorneys, the ALJ found—based on a review of the attorneys' respective declarations—that all of the fees requested were related to Hinojos's claim and that these fees were therefore "appropriately allocated." The ALJ thus awarded Hinojos all the requested fees incurred by the other attorneys.

¶9 However, the ALJ made clear that, based on *Christensen I*, he was "not determining the reasonableness of the fee amount itself." Thus, he did not purport to assess things like the difficulty of the litigation, the efficiency of the attorneys, the reasonableness of the number of hours spent, or the reasonableness of the hourly rate charged given the attorneys' experience and expertise. Nor did he take into account the amount involved in the case or the result obtained.

¶10 The Association asked the Commission to review the ALJ's award, arguing that the ALJ's order "should be rescinded" because "the ALJ's unwillingness to determine the reasonableness of the fee award results from a misreading of the *Injured Workers* case." In addition, the Association challenged the ALJ's determination regarding the allocation of fees, asserting (among other things) that Hinojos had not even attempted to allocate Spjute's incurred fees.

¶11 The Commission issued an order affirming the ALJ's decision. The Commission determined that the ALJ had correctly interpreted *Christensen I* and this court's remand order. And it otherwise affirmed the ALJ's determinations regarding the fees award, offering its view that the ALJ had "performed a fair analysis of the evidence." The Commission later denied a request from the Association to reconsider its decision.

ISSUES AND STANDARDS OF REVIEW

¶12 The Association now seeks judicial review of the Commission's decision regarding attorney fees, and it asks us to consider four issues. First, it argues that the Commission misread *Injured Workers* and *Christensen I* in refusing to evaluate the reasonableness of the requested fees. "Whether the Commission applied the correct legal standard is a question of law we review for correctness." *YESCO v. Labor Comm'n*, 2021 UT App 96, ¶ 13, 497 P.3d 839.

¶13 Second, the Association raises a factual challenge to the Commission's award of attorney fees. This challenge takes several forms, including a challenge to the entirety of the award (here, the Association asserts that Hinojos failed to properly allocate his claimed fees and therefore shouldn't have been awarded any fees at all), as well as a challenge to the amount of the awarded fees (here, the Association takes issue with certain line items in the fee declarations). We review these aspects of the Commission's assessment for abuse of discretion. *See Christensen II*, 2025 UT 55, ¶ 105 (stating that the Commission "should assess an attorney fee request for reasonableness just as any district court would"); *see also Raass Bros. Inc. v. Raass*, 2019 UT App 183, ¶ 12, 454 P.3d 83 ("Calculation of reasonable attorney fees is in the sound discretion of the district court and will not be overturned in the absence of a showing of a clear abuse of discretion." (cleaned up)).

¶14 Third, the Association challenges the decision not to hold an evidentiary hearing on Hinojos's fee request. We review this decision for abuse of discretion. *Cf. Selvage v. J.J. Johnson & Assocs.*, 910 P.2d 1252, 1266 (Utah Ct. App. 1996) ("[W]e address the issue of whether the trial court abused its discretion in refusing to hold an evidentiary hearing on the issue of attorney fees.").

¶15 Finally, the Association challenges the Commission's denial of its motion for reconsideration, and in this same vein it asserts that the Commission failed in its duty "to appropriately review and reconsider" the ALJ's order. We review the Commission's denial of a motion for reconsideration for abuse of discretion. *Cf. Brookside Mobile Home Park, Ltd. v. Peebles*, 2002 UT 48, ¶ 18, 48 P.3d 968 ("Appellate courts review a trial court's grant of a motion to reconsider under an abuse of discretion standard."). Our oversight of the Commission's overall duty to review the ALJ's decisions, however, is for correctness. *See Stage Dep't Store v. Magnuson*, 2024 UT App 85, ¶ 26, 552 P.3d 288 ("Whether the Commission has applied the correct legal standard in reaching its . . . [conclusion] is a legal question, which we review for correctness." (cleaned up)).

## ANALYSIS

¶16 We first address the Association's legal challenge to the scope of the ALJ's and the Commission's reasonableness review of Hinojos's claimed fees. For the reasons discussed, we find merit in this part of the Association's challenge, and on this basis alone we send this matter back to the Commission for a renewed reasonableness assessment. After that, we discuss some of the Association's other challenges, but only by way of giving guidance to the Commission for it to apply on remand.

### I. The Scope of the Reasonableness Assessment

¶17 The Association claims that the ALJ and the Commission failed to apply the correct legal standard by not considering the reasonableness of the requested fees.[2] As recently explained by our supreme court in *Christensen II*, the Association's position on this issue is correct.

¶18 At all times relevant to this proceeding, Utah law permitted the Commission to award "reasonable attorneys' fees and costs" to a litigant who successfully demonstrated "that a discriminatory housing practice has occurred or is about to occur." Utah Code § 57-21-11(1)(b). A similar statute allows the Commission to award "attorney fees" and "costs" to individuals who have demonstrated that an employer "has engaged in a discriminatory or prohibited employment practice." *Id.* § 34A-5-107(8)(b)(iii)–(iv). Applying this latter statute, we held in *Christensen I*—based on our interpretation of our supreme court's opinion in *Injured Workers*—that the Commission, due to its status as part of the executive branch, could not conduct the same sort of "reasonableness" inquiry with regard to attorney fees as district courts could. *See* 2023 UT App 100, ¶¶ 53, 55 & n.15. In particular, we held that the Commission could not weigh in on "the amount an attorney charges for a particular service" or on whether an attorney's hourly rate was "consistent with rates charged by similarly situated lawyers." *Id.* ¶ 55 n.15. But we held

---

2. As a preliminary issue, Hinojos points out that much of the Association's criticism is aimed at the ALJ's order (rather than the Commission's subsequent orders), and he argues therefrom that the Association has attacked the wrong order, given that this court can only review final agency orders. But here, the Commission's subsequent orders adopted the same general approach used by the ALJ. We thus construe the Association's criticism of the ALJ's order to be indirect criticism of the Commission's final agency orders, and we see no procedural problem with this approach.

that the Commission could make determinations about "the relatedness of the charges" to the successful claims for which fees were awarded. *Id.* Our remand order, issued earlier in this case, reflected the law as set forth in *Christensen I*.

¶19 But recently, in *Christensen II*, our supreme court ruled that the interpretation we set forth in *Christensen I* was incorrect. *See* 2025 UT 55, ¶ 105. In particular, the supreme court clarified that the Commission was authorized to "assess an attorney fee request for reasonableness just as any district court would." *Id.* It explained that "the question of what constitutes a reasonable fee" is not "controlled by any set formula" and that in conducting this inquiry the Commission should consider various factors, including "the difficulty of the litigation, the efficiency of the attorneys in presenting the case, the reasonableness of the number of hours spent on the case, the fee customarily charged in the locality for similar services, the amount involved in the case and the result attained, and the expertise and experience of the attorneys involved." *Id.* (cleaned up).

¶20 While *Christensen II* was not published until after the underlying events and briefing for this issue were completed, the statutory language the court was interpreting in that case had been in effect at all times relevant to this case. *See id.* That is, *Christensen II* did not introduce a new rule that was effective only prospectively; rather, it provided an interpretation of statutory text that had already been in effect for years. *See DIRECTV, Inc. v. Imburgia*, 577 U.S. 47, 56 (2015) ("[J]udicial construction of a statute ordinarily applies retroactively."); *see also Rivers v. Roadway Express, Inc.*, 511 U.S. 298, 311–12 (1994) ("The principle that statutes operate only prospectively, while judicial decisions operate retrospectively, is familiar to every law student . . . ." (cleaned up)). Indeed, no party to this proceeding asserts that *Christensen II* is inapplicable here.

¶21 In supplemental briefing,[3] however, Hinojos asserts that remand is not required because, in his view, the Commission actually did assess the reasonableness of his claimed fees. We reject this argument. In keeping with our remand instructions, the ALJ and the Commission did assess one aspect of reasonableness—the extent to which the claimed fees were related to Hinojos's successful claims—but they expressly declined to assess other aspects. Indeed, the ALJ said that he was "not determining the reasonableness of the fee amount itself," because that would be contrary to the remand instructions. And the Commission block-quoted *Christensen I* and noted that it was prohibited from, for example, denying a fee request on the ground "that the attorney's hourly rate was not consistent with rates charged by similarly situated lawyers." It is clear from the record that neither the ALJ nor the Commission performed a complete reasonableness review.

¶22 Finally, Hinojos argues that even if the Commission failed to undertake a complete reasonableness inquiry, the Association has not shown that it was harmed by the Commission's actions. We disagree. Hinojos attempts to fault the Association for not specifically raising reasonableness objections (for instance, to his attorneys' hourly rates or to the excessiveness of the requested fees) before the ALJ or the Commission, but he overlooks that our remand order—by referencing *Christensen I*—implicitly forbade the Commission from engaging in such inquiries. Under these circumstances, the Association's decision not to raise these types of reasonableness objections was entirely understandable.

¶23 In this situation, a remand is required so that the Commission can engage in a complete reasonableness inquiry, as

---

3. We invited supplemental briefing from the parties on the question of whether, and to what extent, *Christensen II* affected the parties' arguments in this case. Both sides accepted our invitation, and we appreciate the parties' submissions.

described by our supreme court in *Christensen II*. On this basis alone, we set aside the Commission's attorney fees award, and we send this case back to the Commission so that it can conduct the proper reasonableness inquiry in the first instance.

## II. Guidance on Remand

¶24　Because we have set aside the attorney fees award and returned this case to the Commission, we could end our analysis here. But the parties have briefed additional issues that are likely to come up in subsequent proceedings, and we opt to discuss some of those issues so that we can provide guidance that we hope will be useful on remand. *Cf. State v. Low*, 2008 UT 58, ¶ 61, 192 P.3d 867 (stating that, when "there are other issues presented on appeal that will likely arise" on remand, we may "exercise our discretion to address those issues for purposes of providing guidance on remand").

### A.　Allocation

¶25　The Association argues that the ALJ abused its discretion by not just outright denying Hinojos's fee request "based upon Hinojos's failure to allocate" Spjute's fees. In addition, and in this same vein, the Association challenges the Commission's award of fees incurred by two of Hinojos's earlier attorneys. We disagree with both arguments.

¶26　As already noted, the Commission "should assess an attorney fee request for reasonableness just as any district court would." *Christensen II*, 2025 UT 55, ¶ 105. And part of that reasonableness inquiry—but not all of it, *see id.*—involves assessing whether the requested fees are related to the claims upon which the claimant is entitled to recover fees. *See Christensen I*, 2023 UT App 100, ¶ 55 n.15. In making assessments about whether fees have been properly allocated, district courts have (and the Commission has) a fair amount of discretion. *See Burdick v. Horner Townsend & Kent, Inc.*, 2015 UT 8, ¶ 59, 345 P.3d 531 ("The

district court may, in its discretion, deny fees altogether . . . if they have not been allocated as to separate claims and/or parties." (cleaned up)). But a court's discretion to deny fees in their entirety "is not unlimited" and does not permit it "to forgo a reasoned analysis." *In re A. Dean Harding Marital & Family Trust*, 2023 UT App 81, ¶ 148, 536 P.3d 38 (cleaned up). Indeed, in *Burdick*, our supreme court determined that a district court had exceeded its discretion by denying a request for fees, in its entirety, for failure to allocate, noting that the movant's "affidavit clearly identifie[d] 282 hours attributable only to" the successful claim. 2015 UT 8, ¶ 60. And more recently, we emphasized that "[w]holesale denial of a fee request on allocation grounds should be reserved for situations where a party either makes no effort to allocate at all . . . or . . . makes only token or wholly inadequate attempts to allocate." *In re Harding Trust*, 2023 UT App 81, ¶ 150. We stated that in cases "where a party has taken a good-faith and detailed run at allocation, the better approach—if a [district] court remains of the view that the cuts are not quite deep enough—is to make a reduced award rather than to deny the request in its entirety." *Id.*

¶27 Here, with regard to the fees incurred by Spjute, the ALJ determined that Hinojos's (and Spjute's) allocation assertion— "that further allocation [was] not possible due to the intertwined nature" of Hinojos's and Second Claimant's claims—was made in good faith, even though the ALJ ultimately disagreed with it. And the ALJ—apparently taking *In re Harding Trust* at its word— determined "to make a reduced award rather than to deny the request in its entirety." *See id.* Specifically, the ALJ decided to cut Spjute's fees in half, after determining that it was "reasonable" to conclude "that the workload" between Hinojos's and Second Claimant's claims "would be close to an even split." The Commission affirmed that ruling.

¶28 We are not prepared to hold that this analysis represented an abuse of the Commission's discretion to determine the amount of reasonable attorney fees that should be awarded to a claimant.

While the ALJ and the Commission will be free to revisit this analysis on remand, in connection with the more complete reasonableness inquiry required by *Christensen II*, the sort of analysis employed by the Commission the first time around regarding allocation of Spjute's fees seems to us to fall within the bounds of the Commission's discretion.

¶29　And the same is true with regard to the ALJ's and the Commission's decisions regarding whether Hinojos's earlier attorneys—Disability Law Center and Bachman—had performed work related to the claims for which fees were awardable. The attorneys in question averred as much in their affidavits, and the ALJ's and the Commission's reliance upon those sworn representations does not constitute an abuse of discretion.

B.　　Holding a Hearing

¶30　Next, the Association raises a challenge to the ALJ's decision to not hold an evidentiary hearing "at which [the Association could have] inquire[d] into, analyze[d] and challenge[d]" the fees requested by Hinojos. For support, the Association cites *Cottonwood Mall Co. v. Sine*, a case in which our supreme court stated that, "[i]f necessary, . . . a party should have an opportunity to contest the accuracy of the documents by either counter-affidavit or cross-examination of the opposing attorney before the court." *See* 830 P.2d 266, 268–69 (Utah 1992). However, a hearing is not mandatory in a situation like this one, and a court (or an ALJ) has wide discretion to determine whether to hold a hearing at all and, if it does, whether to allow evidence to be taken and witnesses to be sworn and examined. Indeed, in *Cottonwood Mall*, in the sentence immediately prior to the one relied upon by the Association, the court implied that in this context a hearing would be the exception rather than the rule, stating that it will "[u]sually . . . be sufficient if the opponent is provided access to supporting documents such as attorney time records." *Id.*

¶31   In this case, it was not an abuse of discretion for the ALJ to decline the Association's request for an evidentiary hearing. Here, the ALJ asked for additional briefing when he believed he didn't have enough information to decide the matter. The Association had a full and fair opportunity to examine Hinojos's supporting documentation and lodge appropriate objections. On remand, it will again be up to the ALJ and the Commission to decide whether to hold a hearing, and (if challenged) we will again review that decision deferentially.

C.     Meaningful Review

¶32   Finally, the Association assails the scope of the Commission's review of the ALJ's attorney fees determination. In particular, it asserts that the Commission improperly affirmed the ALJ's fees award and denied the Association's motion for reconsideration "without any meaningful analysis of the Association's . . . objections." We see no support for this contention in the record submitted to us. After all, the Commission issued written decisions explaining its reasoning; there is no indication whatsoever that the Commission's review was unduly cursory or that the Commission failed to meaningfully analyze the Association's objections.

CONCLUSION

¶33   In this case, the ALJ and the Commission studiously followed our previous remand order and limited their review of the reasonableness of Hinojos's claimed attorney fees to issues related to allocation. But as set forth in *Christensen II*, our remand order incorrectly instructed the Commission, and for this reason another remand is required. For the reasons discussed, we set aside the Commission's award of attorney fees, and we send this case back to the Commission for further proceedings consistent with this opinion, including a complete reasonableness review in accordance with *Christensen II*.

_____